# CASES ARGUED AND DETERMINED

——IN THE——

# SUPREME COURT

——OF THE——

## STATE OF ARKANSAS

——AT THE——

### MAY TERM, 1885.

---

### St. L., I. M. & S. Railway Co. v. Beidler.

1. STATUTE OF FRAUDS: *Memorandum of sale of land.*
   A memorandum of a transaction for the sale of land which does not show the terms and conditions of the sale, the price to be paid and the time for payment is not sufficient to satisfy the requirements of the Statute of Frauds.

2. SAME: *Same. Several writings: Specific performance.*
   When the mutual relation of several writings appears on their face, and the writings are made in the course of one and the same transaction, they will be read together as one instrument: and if by the light of each upon the other a court can, without resorting to extrinsic evidence, ascertain and identify the parties to the contract, the subject matter and terms and conditions of the sale, specific performance will be decreed. It matters not what may have been the immediate purpose for which some of the writings were prepared, or that one of them may be unsigned. All that the statute requires is written evidence from which the whole contract can be made out.

3. CONVEYANCE: *Description of the land.*
   A contract for the sale of a tract of land " except five acres " at a designated corner of the tract is sufficiently descriptive of the land contracted. The exception means five acres laid off in a square.

4.   SPECIFIC PERFORMANCE:   *Land encumbered with mortgage.*

A vendor who has contracted for the sale of land on which he had executed a
previous mortgage can not object to the performance of the contract on account
of the encumbrance if the vendee is willing to accept it in that condition.

APPEAL from *Miller* Circuit Court.
Hon. C. E. MITCHEL, Circuit Judge.

*Dodge & Johnson* for Appellant.

The blank contract was no contract, and as far as that in-
strument is concerned is of no avail to take this case out of the
Statute of Frauds.

That as to the receipt first above referred to, it can be of
no avail here.   Although purporting to be for purchase money
made upon land, it makes no mention of any land of any kind,
or description or location, but contents itself by referring to
certain land " as expressed in the contract number 2,444 ", and
when we come to refer to that contract we find it is the blank
form above quoted.   This receipt, coupled with the alleged
contract, can avail nothing, and is clearly within the Statute
of Frauds.

We come to the certificate last above quoted, and upon this
memorandum in writing, coupled with the other, Beidler relies
to take the sale out of the Statute.   But the attempt can but
prove futile; and for three reasons:

1st.   It is not such a memorandum in writing as is contem-
plated by the Statute of Frauds, in this, that it does not describe
the lands with such certainty that they can be identified, giving
neither the County nor State, nor metes and bounds.

2d.   Because, by the terms of the memorandum, it purports
to have sold a certain number of acres out of an 80-acre tract,
which shall include all of said 80 acres not reserved for a steam
pump, and for company purposes.   What the reservation was,
where located, when, how, and by whom, could only be ascer-
tained by parol evidence; and

3d.   Because, take all the written memoranda and receipts relied on, and the plat referred to in a receipt given by J. K. Brantly, (which we contend could in no manner bind this Plaintiff,) it is impossible to ascertain the terms of the sale or the property sold, from any or all of them, *without a resort to parol evidence.*

That the alleged contract of sale is within the Statute of Frauds, we think there can be no doubt, and unless there is a sufficient memorandum in writing, signed by the Plaintiff, (the Railway Company defendant in the cross-bill,) to meet the requirements of the statute, Beidler is not entitled to a specific performance.

The rule as to the requirement of the *memorandum*, is, that it must express the whole contract.   It need not be all set out in one writing, and may be ascertained by separate writings which refer to each other.   It must show the parties to the contract, the subject matter, and the price to be paid; *and if a resort to parol evidence is necessary to establish any of these elements, the memorandum will be insufficient.*

"Every agreement which is required to be in writing, by "the Statute of Frauds, must be *certain* in itself, or capable of "being made so by a reference to something else whereby the "terms can be ascertained with reasonable precision, or it can "not be carried into effect.   The cases to this point are numer- " ous and decisive, as will appear by a short reference to some " of them."   *Abeel v. Radcliffe, 13 John N. Y., 299; Blagden v. Bradbear, 12 Ves., 466; 1 Scho. & Lef., 22; Prec. in Chy., 560; 11 East., 142; 1 Atk., 12; 3 Bro. C. C., 318; Prec. in Chy., 374; Gilb. Eq. Cas., 35; 2 Vern., 415; 1 Ves. Jr., 279; 3 Johns, 399; 1 Peters, 652.*

Had this *blank form* been filled out and signed, there would have been no controversy on this point here, but that it was not, there is no dispute.   To say the least of it, there was no certainty in the contract as to the land intended to be bought

by Beidler, upon which to found the decree. *Chrisman v. Partee, 38 Ark., 44.*

The fourth section of the Statute of Frauds provides, that *no* action shall be brought upon any of the contracts there enumerated, unless the agreement, promise or contract, upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party *to be charged therewith*, or signed by some other person by him thereunto properly authorized. *Gantt's Digest, Sec. 2951, part 4.*

What then is necessary to constitute this memorandum in writing sufficient to comply with the Statute?

This note or memorandum must, of course, be such as to import, generally, a transaction of the nature which is claimed to be proved by it. Form is immaterial, and several letters or other writings may be taken together to make the memorandum. In all cases the mutual relation of the several writings relied on must appear upon their face, and *can not* be established *by parol* evidence.

We cite only a few of the authorities referred to by Mr. Browne in his work on the Statute of Frauds. Sec. 346, Note 5. *Morton v. Dean, 13 Met., 388; Moale v. Buchanan, 11 Gill. & Johns., 314; Freeport v. Bartol, 3 Greenl., 310; Nichols v. Johnson, 10 Conn., 198; Adams v. McMillan, 7 Port. (Ala.), 73; Blair v. Snodgrass, 1 Sneed (Tenn.), 1; Willey v. Roberts, 27 Mo., 388.*

And it seems that fastening two or more papers together (when they do not refer to each other) after they have been separately prepared, is not sufficient. *Tallman v. Franklin, 3 Duer., 395.*

Although one writing refers specifically to another, the terms of the intended contract may still be left in doubt, and the requirements of the Statute be unsatisfied for want of

St. L., I. M. & S. Railway v. Beidler.

certainty in the writing referred to. *1 Ves. Jr., 326; 11 East., 142; Browne St. Frauds, Secs. 349, 355, 365.*

Do the contents of the memorandum contain sufficient as to the subject matter, taking all the writings together, to make it certain, full and complete?

*The general rule is that it must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intentions of the parties. 4 Kent's Com., 511; Browne's Statute of Frauds, Sec. 371; 3 Parsons on Contracts, p. 13 et seq. and notes.*

In the first place the note or memorandum must import an agreement made. *If it show a treaty pending,* and not a contract concluded, or, referring to it, *annex conditions* or *otherwise make variations,* it has no effect to bind the party from whom it proceeds.

It is also necessary for the written memorandum to contain the names of the contracting parties, and to be signed *by the party to be charged.*

Again, the memorandum should show the price agreed to be paid for the property sold, where the contract is one of sale. Where a price is stipulated by the parties, it is *manifestly an essential* part of the agreement; *its omission from the memorandum, therefore, is fatal. Browne's Stat. of Frauds, Sec. 376; Preston v. Merceau, 2 W. Black., 1249.*

In cases of sales, the *credit* stipulated is an essential term of the contract, and *must* appear in the memorandum, and such seems to be the established rule in actions at law.

And the subject matter of the defendant's engagements must of course appear from the memorandum. *Land, for instance, which is purported to be bargained for, must be so described that it may be identified. Browne's Statute of Frauds, Sec. 385 and Note 2.*

St. L., I. M. & S. Railway v. Beidler.

The memorandum *must show* the consideration upon which the defendant's promise is founded. *Wain v. Warlters,* 5 *East., 21; Sanders v. Wakefield, 4 Barn. and Ald., 595.*

As stated by *Mr. Browne, Sec. 390,* there is a contrariety of opinion in this country upon this doctrine, as expounded in *Wain v. Warlters, supra,* and as to the rule that the memorandum must show the *consideration,* it is sustained in New Hampshire, New York, New Jersey, Maryland, South Carolina, Georgia, Indiana, Michigan and Wisconsin, and in others repudiated. In this State there has as yet been no adjudication upon this point. See analogous case in *21 Ark., 533.*

Review the evidence *in extenso,* and contend that Beidler was guilty of deception, misrepresentations, etc., amounting to a fraud on Appellant.

The decree is erroneous, in this:

1st. It requires a specific performance by metes and bounds, and there is nothing in the contract of any metes and bounds, nor any memorandum in writing or otherwise from which the bounds can be discovered. To reach this description Hogane's survey must be taken upon parol evidence, and the proof all shows that, as Hogane testifies, he made the survey after the sale, at Beidler's request.

2d. The description of the pump reservation on the plat, and as described in Hogane's description, is 100 yards south of where it was and is now located. It was located by Hogane and Beidler by guess-work. Plaintiff had nothing to do with this, and, as Hogane, and Dudley, and Essex testify, it was all done by Hogane at Beidler's request, without any authority whatever from Plaintiff, or any of its agents.

3d. Beidler admits in his evidence, that a perpetual right of way, to and from the pump reservation, was to be reserved to Plaintiff, and yet the decree refuses to recognize this fact, and refuses to decree Plaintiff that right.

4th. The amount decreed as due from Beidler to Plaintiff is erroneous by over $100.

5th. The decree compels Plaintiff to make a good and sufficient warranty deed to Beidler, when the evidence discloses the fact that there is a deed of trust upon the property, duly rendered, which Beidler knew and was told was one of the reasons that were preventing, and did prevent, a closing of the sale, until the trustees would sign the contract, and for which the contract was to be sent to New York.

6th. Because the findings of facts are not only not sustained by the evidence, but are directly in the face of the evidence, and if upheld will perpetrate a fraud upon the Appellant's rights.

*W. F. Henderson and John B. Jones*, for Appellee.

These writings constitute one transaction, and must be read and construed together. Instruments executed in the course of the same transaction, are, in the eyes of the law, one, and may be read and construed as such, without regard to form. *Vol. 2, Smith Leading Cases, 7 American Ed., p. 259.* Parol evidence is admissible to show that different instruments were executed in the course of the same transaction. *Same, 256.* It is no doubt true that the interpretation of deeds and contracts, formally prepared and purporting to be a full and final expression of the meaning of the parties, must be drawn from the four corners of the instrument. But the case is obviously different where writings are, on their face, fragmentary or imperfect, and appear to be the memoranda or recitals of parts of a contract or transaction, rather than a full and authentic record of the whole. Whenever, therefore, the agreement lies scattered in a variety of documents, they should all be consulted, and each read with the aid of the light afforded by the others, and with the aid of such extrinsic evidence as may be requisite to ascertain and identify their subject matter. *Same,*

*259.* See, also, *Haney v. Caldwell, 35 Ark., 156.* To answer the requirements of the Statute of Frauds, no form of language is necessary; anything from which the intention may be gathered; any kind of writings, from a solemn deed down to mere hasty notes or memoranda, in books, papers or letters, will suffice. *McConnell v. Brillhart, 17 Ill., 360;* see, also, *Browne on Statute of Frauds, Sec. 351.* The writings need not be executed for the express purpose of binding the parties. *Browne, Section 154.* If the consideration has been paid it need not be mentioned. *Browne on Statute of Frauds, Sec. 379;* see, also, *80 N. Y., 479; Browne St. Frauds, Sec. 350.*

In *Atwater v. Schenck, 9 Wis., 165,* the land was described as S. W. 1-4 Sec. 3, T. 10 N., R. 14 E.; neither county nor state is mentioned. Of this the court say: "Courts will take judicial notice of the government surveys and legal subdivisions of lands, and as the parties to the contract all reside in this state, will presume that the land referred to is situated in this state, at least, until something to the contrary appears." But, moreover, the plaintiff offered to identify the land by a witness. This was competent evidence, and should have been received. *28 Ark., 147.*

Five acres in S. W. corner is five acres in a square, *66 Ill., 519.* There were no misrepresentations or deception practiced.

Even if Beidler had made false representations, the Railway Company is not in position to raise that question.

There was no fiduciary relation existing between the Company and Beidler; they were dealing at "arms length." Beidler certainly had not so much knowledge of the reservations and need for reservations as Essex had; at least, the law will presume that Essex knew the circumstances, just as the law presumes every man knows the condition of his own property, and knows his own business. It was Essex's business to know about the reservations. If he did not know, he could have learned much easier than Beidler could. A party whose duty

it is to know the truth concerning facts fraudulently represented, cannot complain if he acted upon the false representations. He was not deceived, or, at least, would not have been, had he done that which the law required him to do—that is, made due inquiry on the subject. *Bigelow on Fraud, 336.* Where the means of information are at hand, and equally open to both parties, and no concealment made or attempted, the language of the cases is: That misrepresentation furnished no ground for a court of equity to refuse to enforce the contract of the parties. *Slaughter's administrator, v. Gerson, 13 Wal. 385.*

This rule applies to verbal contracts. If a contract is reduced to writing, the only evidence of the understanding and consent of parties to the terms expressed, is the written contract itself. The object of the Statute of Frauds was to prevent such proof by parol. To allow the party to prove by parol that he did not consent to the terms of a written contract signed by him, would defeat the very object of the statute.

SMITH, J. The Railway Company sued Beidler in ejectment for eighty acres of land. He claimed to have bought of the Company fifty-three 75-100 acres, parcel of the tract described in the complaint, paying one-fourth in cash and giving his notes for the deferred payments. He made his answer a cross-bill, tendered the residue of the purchase money and demanded a specific performance of the agreement. The cause was transferred to equity and for defenses the Company set up the Statute of Frauds and insisted that the contract upon which Beidler relied was obtained by means of false and fraudulent representations, and that as soon as the deception which had been practiced was discovered, it had offered to refund Beidler's money and had destroyed his notes. The decree was that the Company should execute to Beidler a good and sufficient deed with covenants of warranty, for the premises mentioned in the cross-bill, upon the completion of his payments.

The following instruments were put in evidence by Beidler:

"St. Louis, Iron Mountain & Southern Railway Co.  
"Land Department.  
"Little Rock, Ark., Dec. 26, 1877.

"Contract No. 2,444.

"Received of Henry M. Beidler, of Texarkana, Miller "County, Ark., the sum of two hundred and one $\frac{56}{100}$ dollars, on "account of purchase money of land of this company, as ex-"pressed in his contract, numbered as above.

"Thomas Essex,

"$201.56.                         Land Commissioner.

"This receipt is given to be held by the party until the con-"tract be transmitted to New York for signature by the Trus-"tees, and received back at this office."

"St. Louis, Iron Mountain & Southern Railway,  
"Arkansas Division,  
"Formerly Cairo & Fulton Railroad,  
"Land Department.  
"Little Rock, Ark., December 26, 1877.

"This is to certify, that H. M. Beidler, of Texarkana, Miller "county, Arkansas, has purchased from St. Louis, Iron Moun-"tain & Southern Railway, the following tracts of land:

"All of N. E. of S. E., Sec. 30, T. 15 S., R. 28 W., except "5 acres in S. W. corner of said forty, reserved for company's "steam pump, containing an area of 35 acres; also that part "of the N. W. of S. E., Sec. 30, T. 15 S., R. 28 W., outside of "lands reserved for company purposes, containing an area of "18 $\frac{75}{100}$ acres, as set forth in contract between said Beidler and "St. L., I. M. & So. Ry. Co.

"Number 2,444.

"Thomas Essex, Land Commissioner."

1. Statute of Frauds: Memoranda of sale of land.

These memoranda are insufficient of themselves to satisfy the requirements of the Statute. They do not show the terms and conditions of the sale, the price to be paid and the time within which payment is to be made. They refer, however, to a certain contract numbered 2,444, which was produced by the

St. L., I. M. & S. Railway v. Beidler.

Company and which proved to be nothing more than a printed form of articles of agreement in use by the Company for sales of land, signed by Beidler alone, and with none of the blanks filled; so that it amounts to no more than a sheet of blank paper with Beidler's signature at the end. But attached to this blank form was the following memorandum in pencil:

" Sale suspended.

" H. M. Beidler, Texarkana, Ark. Con. No. 2,444. Part of N. 1-2 of S. E., Sec. 30–15–28; 53.75$ at 15, outside of reservation, Miller county; 1-4 cash, balance in 1, 2 and 3 years. Reserve perpetual right-of-way for pipe from pump to tank."

And the company also produced and filed with said blank form the following, which we take to be an excerpt from its book of sales:

## ST. LOUIS, IRON MOUNTAIN & SOUTHERN R'Y.

LAND DEPARTMENT.

*Memo of Sale.*

*H. M. BEIDLER, Texarkana, Arkansas.*

DATE, December 26, 1877.

| PART OF SECTION. | Section | Town. | Range. | Area. | Price. | List. | Page. | Approved Val. Dolls. | Cents. |
|---|---|---|---|---|---|---|---|---|---|
| N. E., S. E.......... Except 5 acres in S. W. corner, reserved for Company Pumping Apparatus. | 30 | 15 S | 28 W | 35.00 | .... | 3 | 217 | 6 | 00 |
| That part N. W., S. E......... Outside land reserved for Depot purposes. | 30 | 15 S | 28 W | 18.75 | .... | 3 | 217 | 6 | 00 |
| | | | | 53.75 | | | | | |

Terms: ¼ cash; balance in 1, 2 and 3 years from January 1, 1878 . ................ ............$201.56

Principal..$201.56 ⎫ January 1,
Interest... 36.28 ⎬ 1st Note.
Total...$237.84 ⎭ 1879.

Principal..$201.56 ⎫
Interest... 24.19 ⎬ 2d Note.
Total..$225.75 ⎭ 1880.

Principal..$201.57 ⎫
Interest... 12.09 ⎬ 3d Note.
Total...$213.66 ⎭ 1881.

Total Amount of Sale..................................$806 25
Amount Cash Payments........................... 201.56

Amount Deferred Payment..........................$604.69

St. L., I. M. & S. Railway v. Beidler.

2. SAME. Several writings. Specific performance.     The mutual relation of these several writings appears on their face. Manifestly, all of them were made in the course of one and the same transaction. They will be read together, therefore, and if, with the aid of the light thrown by each upon the other, a court can, without resorting to extrinsic evidence, ascertain and identify the parties to the contract, the subject matter and the terms and conditions of the sale, specific execution will be decreed. It matters not what may have been the immediate purpose for which some of the writings may have been prepared, or that one of them may be unsigned. All that the statute requires is written evidence from which the whole contract can be made out. *Pomeroy on Specific Performance, Secs. 82-4; Browne on the Statute of Frauds, Secs. 346, 349; 1 Reed, do, Secs. 340, 351; 1 Gr. Ev., Sec. 268; Allen v. Bennett, 3 Taunton, 168; Johnson v. Dorgson, 2 M. & W., 653; Sarl v. Bourdillon, 1 C. B. N. S., 188, (87 E. C. L. R.); Newell v. Radford, L. R., 3 C., p. 52; Long v. Millan, 4 C. P. Div., 450; S. C. 30, Moak Eng. Rep., 659; Barry v. Coombe, 1 Peters, 640; Salmon Fall Manf'g Co. v. Goddard, 14 How, 446; Beckwith v. Talbot, 95 U. S., 289; Raubitschek v. Black, 80 N. Y., 478.*

3. CONVEYANCE: Description of land.     It is, however, urged that the lands are not sufficiently described. The description of the first tract is complete in itself. It calls for a block of forty acres, described according to the legal subdivisions upon the public surveys, except five acres in the southwest corner. The exception means five acres laid off in a square. *Walsh v. Ringen, 2 Hammond, (Ohio), 328; S. C. 19 Am. Dec., 555; Cunningham's Lessee v. Harper, Wright (Ohio), 366; Hay's Lessee v. Storrs, Ib. 711; Baybee v. Hageman, 66 Ill., 519.*

The description of the other tract presents the case of a latent ambiguity which is capable of being removed by parol proof. The land intended was fully identified, the sale having been made with reference to a previous survey and plat, in which the boundaries were established. *Cate r. Stewart, 28*

*Ark., 146; Swayne v. Vance, Ib., 282; Dorr v. School District, 40 Id., 237.*

Upon the other branch of the case—the alleged fraud of Beidler in procuring this sale—the evidence tended to show that he saw the president of the road, at Texarkana, in November, 1877, told him that he wished to buy this land, which lay near the Company's depot at Texarkana, on the south side of the track. The president inquired of an official connected with the operating department of the railway service, whether he had sent up the maps showing what lands the Company desired to reserve from sale at that point; and receiving an answer in the affirmative, intimated that the land was in the market and referred Beidler to the land commissioner.

Shortly afterwards Beidler came to Little Rock and in company with a friend called at the commissioner's office and applied to purchase the land. The commissioner says he explained to Beidler that he could not sell any part of this tract until the operating department had fixed the amount of the reservation that was required for railroad purposes. But Beidler and his companion swore that the commissioner told Beidler he could have the land; that he did not know, however, how many acres it contained, and a survey would be necessary; and that the parties agreed upon one Hogane to survey it. Beidler returned to Texarkana, and upon inquiry found that Hogane had already made a survey, and from him he procured a plat, which showed a reservation of only fifty feet from the main track south for right of way.

In December following Beidler met the commissioner in St. Louis and exhibited the plat. The commissioner examined it and expressed his opinion that a mere right of way through the land was not a sufficient reservation. He asked if the division superintendent was cognizant of the making of the map, and was informed that he had been present when the lines were run. The commissioner finally said he would be satisfied

if the division superintendent would certify in writing to the correctness of the lines as shown on the plat.

Beidler, not having a personal acquaintance with the division superintendent, requested Hogane, the surveyor, to lay the map before him and have him examine it, and if found correct, to so certify. This was done, and the division superintendent indorsed on the map, over his official signature, "This is correct."

On the 19th of December, Beidler called at the commissioner's office in Little Rock, for the purpose of making the purchase, but not finding him in, left with his chief clerk the plat certified by the division superintendent to be correct, and $200 in money to be applied on the proposed purchase when the terms were settled. Under date of December 24th, the commissioner writes Beidler that he has the certified plat; that he considered the land worth $16 per acre, and wishes to hear from him soon. In response to this, Beidler came in person, and on the 26th of December the treaty of purchase was concluded.

On the same day, but after the writings had been drawn and delivered, the commissioner and the division superintendent discussed the matter and came to the conclusion that too much of the land had been sold off, and that the Company might hereafter need some of it to accommodate future expansions of its business. Prompt measures of retraction were taken, but the matter had proceeded too far to allow of any *jus deliberandi* or *locus poenitentiæ.*

In all this we see nothing that comes up to the legal idea of fraud. No fiduciary relation existed between the parties, and the means of information were equally accessible to both. All that can be said is that Beidler seems to have taken advantage of the want of understanding between the land department and the operating department of the Railway. But we are not sat-

isfied that he actively and knowingly contributed to produce that misunderstanding. His conduct in procuring the certification of the map is not irreconcilable with good faith and fair dealing. It is true the division superintendent was not aware at the time, of the purpose for which his signature was wanted, nor even that a negotiation for purchase was pending. But we are not prepared to say that it was Beidler's duty to inform him. He had never undertaken to do this. And the land commissioner would not have been misled if he had made due inquiry on the subject.

There is some slight evidence in the record that the land was subject to a deed of trust made by the Company, the legal title being outstanding in the Union Trust Company, of New York, and that it was customary to send forward these contracts to have the trustee join in the sales. If the land is mortgaged, still the Company has an equity of redemption which it may sell and convey. And if Beidler chooses to accept the land in that condition, certainly the Company has no cause to complain.

*4. Specific Performance. When land encumbered with mortgage.*

Let the decree be affirmed.