BLISS *v.* MANILLA SPECIAL SCHOOL DISTRICT.

Opinion delivered December 22, 1919.

1.  SCHOOLS AND SCHOOL DISTRICTS—BUILDING CONTRACT.—A written contract between plaintiff architect and defendant school district, employing plaintiff to prepare plans for a school building, with a provision that the contract was void if the district was unable to secure money on its bond issue and another instrument executed by the same parties on the same day under which plaintiff agreed to buy the bonds for a specified sum *held* to constitute one contract, so that the two instruments should be construed together.

2.  SAME — BUILDING CONTRACT — ARCHITECT'S FEE.—In an action against a school district by an architect to recover his fee, an instruction that if plaintiff duly made the plans and was prepared to buy the district's bond issue as he had agreed, and the district failed to carry out its obligations, the plaintiff could recover, but that if plaintiff failed to purchase the bond issue without the district's fault the jury should find for defendant, *held* proper.

Appeal from Mississippi Circuit Court, Chickasawba District; *R. H. Dudley,* Judge; affirmed.

*Ben F. Reinberger,* for appellant.

1.  The school board sold the bonds to Speer & Dow, and under the contract and the law and evidence the judgment should have been for plaintiff for $352.70 as architect and $221 as superintendent.

2.  There was no breach of the contract by appellant, and there is error in the instructions. The two contracts were separate and distinct, neither resting on the other.

*Buck & Lasley,* for appellee.

1.  The two instruments should be construed as one contract. 127 Ark. 535; 108 *Id.* 69.

2.   The court did not err in its instructions. Appellant did not take and pay for the bonds. The jury has settled all questions of fact against appellant and there are no errors of law.

WOOD, J. This action was instituted by the appellant against the appellee to recover damages on account of an alleged breach of contract.

The appellant alleged that he entered into a contract with the appellee whereby he was employed by the latter as architect and as superintendent for a school building; that he was to receive for his services as architect the sum of 3 per cent. on the contract price when the plans and specifications were completed and the contract awarded; that if the contract was not awarded 3 per cent. of the estimated cost; that he was to superintend the erection of the building and receive for his services as superintendent the sum of 2 per cent. of the cost of the building; that he performed his part of the contract in preparing the plans and specifications; that the contract was awarded and the building was to cost $11,090; that the appellee refused to accept his services as superintendent, which he was ready to perform, for the erection of the building and failed to pay him his fee as architect and as superintendent, to his damage in the sum of $554.50.

The appellee answered, admitting that it entered into the written contract as alleged, and alleged that the contract provided that the same was to be null and void if the school board was unable to get money on the bonds of the district which it proposed to issue and sell for the purpose of raising funds to erect the building. The answer denied that the appellant performed his part of the contract and denied that he was ready to perform the same.

The appellee further alleged that on the day of the execution of the contract set up in the complaint the appellee entered into a written contract with appellant whereby appellant agreed to purchase bonds of the dis-

trict in the sum of $12,000; that appellant was to receive the sum of $400 and was to deliver the balance of the $12,000 to the appellee on or before the date on which appellee would receive bids and let the contract for the erection of the school building; that at the instance of appellant the appellee issued the bonds and delivered the same to W. B. Worthen & Company, trustees; that on the 10th of October, 1917, at the instance of appellant appellee entered into a written contract with one Thompson for the erection of the school building, the contract price being $11,090. The contract provided that the building was to be completed within ninety days from the date of the contract; that Thompson, the contractor, was ready to comply with his contract, but was unable to do so because of the failure of appellant to accept and pay for the bonds according to his contract; that on account of such failure and neglect appellee was unable to dispose of the bonds until the latter part of February, 1918, when it did so realizing thereon $60 less than the price which appellant agreed to pay; that the contractor, on account of the delay in securing the funds realized from the sale of the bonds, canceled his contract and required appellee to pay him the sum of $16 as damages for its breach of contract; that on account of the breach of contract by the appellant the appellee, in order to secure a school building with the amount of money that it had available, was compelled to have new plans and specifications drawn for a much smaller and cheaper building; that, during the delay caused by failure of appellant to carry out his contract for the purchase of the bonds there was an advance in the price of labor and building material which made it impossible for appellee to construct the building according to the original plans and specifications supplied by the appellant and rendered such plans and specifications worthless to the appellee; that the contract for the sale of bonds and the services of appellant as an architect grew out of the same negotiations and were so related that they should be treated as one contract.

Appellee made its answer a cross-complaint, and alleged that it was damaged by reason of appellant's breach of contract in the particulars set forth $2,576, for which it prayed judgment.

The appellant testified that he was an architect and specialized in school buildings in Arkansas. He introduced in evidence the written contract between himself and the school board of date August 13, 1917.

The contract was as set forth in appellant's complaint and admitted by the appellee. It is unnecessary to set it out. It contained a provision as follows: "This contract is void if the board is unable to get money on bonds."

The appellant testified that he made the plans and specifications and placed them in the hands of the contractors and advertised for bids. The lowest bid was $11,090. The contract was let on condition that money was obtained on the bonds. The bonds were sold and the school board received about the sum of $12,000. Appellant was not paid for his services.

The president of the appellee, school board, testified to the execution of the contract between the school board and the appellant for his services as architect and superintendent of the building. The blanks in the contract were filled out by the appellant. On the same day that the contract was entered into with the appellant for his services as architect and superintendent, the appellant submitted to the board of directors the following offer in writing: "Gentlemen: For the sum of four hundred dollars ($400) we will undertake to prepare the proper resolutions, deed of trust, form of bond, twelve thousand dollars ($12,000) amount, and furnish the lithographed blank bonds ready for signature, together with the opinion of our special bond attorneys, Messrs. Read & McDonough, of Fort Smith, Arkansas, for your proposed school loan. In connection with this proposal we will also pay you par for your bonds at the time of sale of said bonds when properly advertised according to the laws of the State of Arkansas now in force. In this way

you will not be delayed indefinitely in getting your proceedings prepared and ready for the market but will have salable bonds when time comes to ask for bids, bonds to be six per cent. and mature in the year 1932.''

Witness further testified after the execution of the contract with appellant that he said he would prepare all papers and mail to the board and requested it to execute them and return to him promptly; that in the purchase of the bonds the board did not know that appellant was not working for himself; it relied upon his contract; that after the execution of the above contract relative to the bond issue papers began to come to the board, which papers it promptly executed and returned, and thus carried out instructions from appellant. The board had executed all the papers by September 22, and sent the same with the bonds to W. B. Worthen & Company, trustees. The board advertised the bonds for sale on the 26th of September. On October 10, 1917, Bliss had the board enter into a contract with one Thompson for erection of the school building which was to be completed within ninety working days from that date. The board at that time had received no money from the bonds. The contractor would not begin working, and the board did not wish him to until it had received money for the bonds. Witness, as president of the board, communicated with Bliss, who finally told witness that war conditions were such that he was unable to get the money on the bonds. The bonds remained with W. B. Worthen & Company, as trustees, until some time in December, 1917, when witness recalled them and canceled Thompson's contract for the erection of the building and wrote appellant that they considered the contract of the board with him null and void. The board paid Thompson sixteen dollars. After the bonds were returned, the board began to receive letters from Speer & Dow in regard to the bonds. The board finally sold them the bonds at par and accrued interest less $460, which was the best price it could get after it had endeavored to sell them to other people. The board paid sixty dollars more than it would have had to

pay appellant if he had taken the bonds. Witness had considerable correspondence, at the request of appellant, with Speer & Dow. Witness did not know whom they represented or what arrangements had been made for the handling of the bond issue. Witness did not know at the time that appellant had attempted to assign his contract. with Speer & Dow. The board looked to appellant for securing the funds. It understood that the reason that it corresponded with Speer & Dow was they were handling the matter for appellant. That is before Speer & Dow made the board the last offer which was accepted. The board received the money for the bonds from W. B. Worthen & Company, trustees, on December 23, 1917.

It appears that the written contract which was signed by appellant to take the bonds was assigned to Speer & Dow August 15, 1917.

Appellant in rebuttal testified that he notified the board at his first meeting with them that Speer & Dow were to handle the bonds and buy them. The board afterwards wrote appellant and also Speer & Dow, saying that it considered the contract canceled. In the meantime the liberty loans had come out, the bonds were not worth the money, and Speer & Dow sent the school board a telegram offering par and accrued interest less $600 for the bonds. Witness told Speer & Dow that they must carry out the original contract for the sale of bonds and protect witness. Witness induced Speer & Dow to renew the first proposition, because witness knew that he was still responsible to the board on the first contract. It was witness' obligation over his own name.

There was correspondence between the school board and Speer & Dow tending to show that the board had accepted Speer and Dow as the assignees of the contract between it and appellant for the purchase of the bonds.

The testimony on behalf of the appellee, however, as above stated, tends to show that the appellee in this correspondence was treating Speer & Dow as represent-

ing appellant until it notified appellant and Speer & Dow that the contract with appellant was at an end.

The testimony of the president of the board of directors of the appellee district was to the effect that the contract made by the appellee with the appellant for services as architect and superintendent and the written proposal of the appellant to the appellee to buy the bonds of the district were executed on the same day, and that they were parts of the same contract, both papers being the result of the same negotiations.

There is no testimony abstracted in the record which disputes the above.

The contract for services as architect and superintendent recites: "This contract is void if the board is unable to get money on the bonds." The contract proposing to take the bonds recited among other things, "We will also pay you par for your bonds. * * * In this way you will not be delayed indefinitely in getting your proceedings prepared and ready for the market but will have salable bonds when the time comes to ask for bids."

The court did not err, in view of the above testimony, in instructing the jury that the two separate papers offered in evidence were to be construed together, and that they constituted one contract; that it was the duty of appellant to make a complete set of working plans and specifications, and that it was also the duty of the appellant to take the bond issue and furnish the money for the erection of the building in the sum of $12,000.

The court correctly construed the two instruments as one contract. *Belding* v. *Vaughan*, 108 Ark. 69; *Grady* v. *Weimer*, 127 Ark. 535. The court also correctly interpreted the mutual obligations of the parties to the contract.

In another instruction the court told the jury that if the appellant furnished the plans and specifications and was ready and willing to perform his contract and take the bonds and furnish the money to the appellee, and the appellee for any reason failed to carry out the contract with respect to its obligations in the sale and

disposition of the bonds, they should find for the appellant the 3 per cent. due upon the contract for the preparation of the plans; that, on the other hand, if the jury found from the evidence that the appellant breached his contract with reference to the purchase of the bonds and furnishing the money, and that this was in no way due to the fault of the appellee, they should find for the appellee.

The above instruction, as we understand the evidence, correctly submitted the issuable facts as to whether or not there was a breach of the contract and who breached the same.

We find no error in the instruction, and there was evidence to sustain the verdict that the appellant breached the contract, and that he was not, therefore, entitled to recover any sum under it.

Conceding, without deciding, that the contract is valid, and treating it as the parties have treated it, *i. e.,* as a valid and binding contract, there was evidence to sustain the verdict in favor of appellees. The judgment is therefore correct, and it is affirmed.