## BELDING v. VAUGHAN.

## Opinion delivered April 28, 1913.

1. CONTRACTS—CONSTRUCTION.—Defendant was one of a number of subscribers to stock in a corporation about to be formed, the subscription to be binding if $20,000 was subscribed. Defendant entered into a contract with plaintiffs for the lease of a photographing device, which recited that defendant acted as agent for the corporation to be formed, and the contract was signed by plaintiff individually. The $20,000 stock was not subscribed; *held,* the subscription list and contract being regarded as executed simultaneously, must be considered together in interpreting the meaning of the contract with plaintiffs, and the contract of lease is not a personal contract of defendant, but rested upon the condition that the corporation be formed. (Page 74.)

2. PRINCIPAL AND AGENT—LIABILITY OF AGENT.—Where defendant executed a contract as agent to be binding upon a corporation for which he acted, when it came into existence, he is not personally liable on the contract, where the corporation was never organized, and the plaintiffs knew that he was acting as agent for the corporation to be formed. (Page 74.)

3. PROMOTER—PERSONAL LIABILITY ON CONTRACT.—Where defendant entered into a contract with plaintiffs as agent for a corporation about to be formed, when both parties are interested in the formation of the corporation, but it is in fact never formed, the defendant will not be held to be a promoter of the proposed corporation, nor personally liable as such to the plaintiffs for failure to perform the contract. (Page 75.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*J. W. Blackwood, John W. Newman* and *H. H. Myers,* for appellants.

1.   As the contract stands it is appellee's personal note.   There is no ambiguity nor doubtful meaning in it, and the court will construe it as made, without supplying or rearranging its words.   150 S. W. (Ark.) 858. If there is any doubt as to its meaning or if it is susceptible of two constructions, it should be construed most strongly against appellee, a practicing lawyer, who wrote it.   153 S. W. (Ark.), 101, 103.

2.   One who describes himself and deals as agent of a corporation not in existence is personally liable.   1 Thompson on Corporations (2 ed.), § 83; *Id.* § § 416, 424; 2 Cook on Stocks, etc., § 705; Alger, ''The Law of Promoters and the Promotion of Corporations,'' § 199; 39 S. W. 966; 60 Mich. 26; 26 N. W. 801; 35 Ark. 144; 168 Fed. 187; 22 L. R. A. (N. S.), 1153; 108 S. W. 948; 23 Am. & Eng. Enc. of L. 237.

Had the Title Guaranty Company been at the time a going concern and appellee its duly authorized agent, he would still be personally liable for the reason that apt words were not used to bind the principal.

Persons who sign their individual names to promissory notes are *prima facie* liable thereon, though they are described therein as trustees or other officers of corporations.   21 L. R. A. (N. S.), 1058, 1059, note, and cases there cited; see also 21 Cyc. 1414; *Id.* 1554; 12 L. R. A. (N. S.), 1190; 10 Ark. 446; 41 Ark. 399, 400; 5 Pet. 349.

3.   The promise to pay on ''May 1, 1907, or earlier upon the organization of the company,'' made the payment due at all events on that day, the only condition affecting the time of payment being that it would become due earlier if the company was organized earlier.   4 Am. & Eng. Enc. of L. 92, 93; 4 Heisk. (Tenn.), 668; 3 Hawks (N. C.), 458; 103 Ala. 479; 85 Ill. 523; 61 Ia. 166; 47 Am.

Rep. 808; 54 Ind. 164; 23 Am. Rep. 639; 74 Pa. St. 13, 7 Cyc. 857.

*Vaughan & Akers, Ratcliffe & Fletcher, Hal L. Norwood* and *W. H. Rector*, for appellee.

1. The words used in the agreement sued on and the facts attending its execution show that the personal liability of appellee was not intended. Parol testimony was admissible to show the circumstances leading up to and following the execution of the writing in order to throw light upon the intention of the parties. 53 Ark. 58, 66; 70 Ark. 232, 238; 96 Ark. 320, 324; 97 Ark. 532; 80 Ark. 363, 369; 99 Ark. 115; 94 N. W. 1044; 50 N. W. 925; 23 Ark. 585-6; 28 Ark. 282; 52 Ark. 73-5; 94 Ark. 419; 2 Devlin on Deeds, § 840; *Id.*, § 843.

2. The conduct of the parties subsequent to the signing of the agreement show that appellee acted as a representative and not in a personal capacity. If in drawing the agreement personal liability had been intended, it could easily have been expressed in plain terms, and certainly the words "as trustee and agent" would have been omitted. 44 Pac. 854; 46 Ark. 129; 55 Ark. 414-417; 88 Ark. 363, 369; 95 Ark. 499; 98 Ark. 421, 425.

3. After April 2, 1907, appellants were equally interested with appellee in the work of promoting the Title Guaranty Company, and are estopped by their conduct from invoking the rule of the personal liability of the promoters.

The signing of the agreement at Hot Springs and the signing by appellants of the subscription contract were simultaneous acts and so closely interrelated as to constitute one contract. 70 Ark. 232. See also 30 Ark. 186; 64 Ark. 627; 1 Thompson on Corporations, § 85; *Id.* § 83; 62 Minn. 332, 64 N. W. 826.

4. The lease agreement and the subscription agreement together constitute a single executory contract or option. 18 Ark. 65, 76; 52 Ark. 30; 45 Ark. 17; 96 Ark. 320; 19 Ark. 262; 22 Ark. 158; 30 Ark. 187; 90 Ark. 272, 276.

By the agreements the completion of the organization of the corporation was a condition precedent to the going into effect of the lease agreement as well as of the stock subscription. 2 Watts & S. 227, 228; 98 Mass. 131; 13 Atl. 468, 474; 119. Pa. 439; 12 Pac. 665, 667; 14 Ore. 356; 37 Ia. 503, 508.

McCULLOCH, C. J. Appellants sued appellee in the circuit court of Pulaski County to recover, upon written contract, the sum of $3,000 for the lease of a patented machine or device called a "Rectigraph," used in photographing records.

Appellee denied personal liability under the contract, and the case was tried before a jury. Both sides, without asking that the disputed questions of fact be submitted to the jury, requested the court to give a peremptory instruction in their respective favor, and the court gave a peremptory instruction in favor of appellee.

The case stands here, therefore, upon the sole question of the legal sufficiency of the evidence to sustain the verdict in appellee's favor. *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71.

In March, 1907, appellee and certain other persons joined in an effort to organize a corporation, with a capital stock of $25,000, to engage in the business, at Little Rock, of abstracting titles to real estate in Pulaski County. A subscription contract was reduced to writing, dated March 28, 1907, whereby the subscribers agreed to take stock for the organization of the corporation, to be known as the "Title Guaranty Company," and stipulated that the subscriptions were conditioned upon their being *bona fide* subscriptions for at least $20,-000 to the capital stock. Several persons, including appellee, signed the contract as subscribers; but the subscriptions did not amount to $20,000, the stipulated sum. Appellants owned or controlled certain territory, including Pulaski County, Arkansas, for the use of the Rectigraph, and on April 2, 1907, appellants and appellee entered into the following written contract:

"This indenture, witnesseth, that George Vaughan,

as agent and trustee for the Title Guaranty Company, a corporation to be organized under the laws of Arkansas, for the purpose of doing an abstract business in Pulaski County, Arkansas, this day agrees to and with George R. Belding and J. A. Stallcup, owners of Lease No. 23 of the Rectigraph Company of Oklahoma City, for the use of the Rectigraph for Pulaski County, Arkansas, to pay to said Belding & Stallcup on May 1, 1907, or earlier upon the organization of said corporation the sum of three thousand dollars, for said lease. And the said Belding & Stallcup, in consideration of the said agreement, have this day subscribed for forty shares of stock in the said corporation. Witness our hands in duplicate this 2d day of April, 1907. (Signed) Geo. Vaughan, Geo. R. Belding, J. A. Stallcup.''

Upon the execution of this contract appellants signed the subscription contract, whereby they took forty shares of the capital stock of the proposed corporation.

Efforts were continued to procure subscribers, but there was not enough obtained to raise the requisite amount of $20,000; therefore the plan failed and was finally abandoned. The effort was, however, continued during a considerable period of time, and in the meantime there was much correspondence between the parties hereto concerning the matter. The manufacturers of the machine sent one to Little Rock, where it was set up and demonstrated by their agent, sent for that purpose, and it remained here in possession of appellee. After the abandonment of all effort to organize the new corporation there was an effort made to dispose of the machine, or, rather, the lease thereof, to another corporation engaged in the business of abstracting titles, and considerable correspondence took place between the parties hereto with respect to that, but nothing came of it, and appellants demanded payment of appellee, which being refused this action was instituted.

It is insisted that the written contract amounts to a personal obligation on the part of appellee to pay to appellants the sum of money named on a certain date,

"or earlier upon the organization of said corporation," and that parol evidence is inadmissible to vary or contradict the terms of the written instrument by showing that it was not intended as a personal obligation of appellee.

Our conclusion is that the two instruments hereinbefore referred to, that is to say, the written subscription list and the contract for the lease of the Rectigraph, were executed contemporaneously so far as the parties to this controversy are concerned, and should be considered together in interpreting the meaning of the contract sued on. No rule of evidence is violated in considering the two together in determining the true intention of the parties. *Vaugine* v. *Taylor,* 18 Ark. 65; *Railway Co.* v. *Beidler,* 45 Ark. 17; *Ford Hardwood Lumber Co.* v. *Clement,* 97 Ark. 522. When thus considered, it is manifest that this contract was not intended as a personal obligation, unconditional, of appellee Vaughan, but rested upon the condition that the proposed corporation should be organized.

Appellants invoke the familiar rules that one becomes personally liable who acts as agent for an undisclosed principal, or who assumes to act for a principal who does not exist; but neither of those rules are applicable to the facts of the case, for appellee did not act for an undisclosed principal, nor did he assume to act for a principal who did not exist. His undertaking was to act for the principal (the proposed corporation) when it came into existence, and not before. Therefore, he is not liable personally. *Hersey* v. *Tully,* 8 Colorado Appeals, 110, 44 Pac. 854.

If the corporation had, in fact, been organized pursuant to the terms of the subscription contract, then the obligation of appellee would have been complete, for he undertook to pay as the agent of the corporation when organized, and if, upon the occurrence of that event, authority from the corporation should have been withheld, then his personal obligation and liability would have attached, for his undertaking was, as before stated,

to pay, as agent of the corporation, as soon as it was organized. That would have constituted a case of one who had impliedly contracted that he had authority, in the contingency named, to act for the corporation, and the obligation would have rested on him to make good the contract if the actual authority should be withheld.

It is also argued that appellee is liable as a promoter of the proposed corporation who induced a third party to extend credit, and is personally liable.

The rule upon which liability in that case rests is, however, limited to dealings with strangers who act in expectation of payment from the prospective corporation. 2 Cook on Stock, Stockholders, etc., § 705.

The rule does not apply in this case for the reason that appellants became equally interested with appellee in the promotion of the affairs of the proposed corporation, and there is no reason why either one should be liable to the other except under the strict letter of the contract. If appellee had induced appellants to accept an unconditional obligation of the proposed corporation, then there would be reason for holding him personally liable as a promoter of the corporation; but that is not the case here, for, as before stated, the parties were jointly interested in the enterprise, and by the terms of the contract itself the obligation to pay was based on the condition that the corporation should thereafter be organized. The rule with reference to liability on that score is stated by the author of a recent textbook as follows:

"Promoters are merely persons who, for purposes of their own, bring about the formation of the corporation. In assuming to make contracts in its name or behalf before it comes into existence, they do not stand in the relation of agency, and they represent only themselves, inasmuch as a nonexisting body can not have agents." Alger on the Law of Promoters and Promotion of Corporations, p. 199.

Stress is laid upon the language of the contract stating the promise to pay on a definite date "or upon the

organization of the corporation" as characterizing the obligation as an absolute one to pay on the date named, whether the organization be completed or not. Authorities are cited in suits based upon promissory notes where similar obligations are construed to amount to an absolute one to pay on the date named, or earlier upon the happening of a certain contingency. Ordinarily that is the proper interpretation of a written obligation for the payment of money; but when this contract is read as a whole and in the light of the attending circumstances, it is manifest, as we have already shown, that it was not intended as an absolute and unconditional obligation to pay but was merely an obligation to pay upon the organization of the corporation, which the parties to this contract were jointly interested in organizing. After the abandonment of this project there were further negotiations between the parties looking to a sale to another abstract company, but the evidence does not establish any contract or obligation on the part of appellee except the written contract which we have already quoted.

Upon the whole, we are convinced that the trial court properly interpreted the contract between the parties and that the evidence was legally sufficient to sustain the verdict. The judgment is therefore affirmed.