Larry STOKES and Sylvia STOKES *v.* Shelton ROBERTS and Rita ROBERTS

85-295                                    711 S.W.2d 757

Supreme Court of Arkansas
Opinion delivered June 23, 1986

*Compton, Prewett, Thomas & Hickey, P.A.,* by: *Floyd M. Thomas, Jr.,* for appellants.

*Wynne, Wynne & Wynne,* by: *Robin F. Wynne,* for appellees.

STEELE HAYS, Justice. Larry and Sylvia Stokes, appellants,

entered into an agreement to sell their western store to Shelton and Rita Roberts, appellees, for $45,000. The price covered the inventory, fixtures and equipment, and a registered quarter horse, worth about $2,000. The transaction was closed on June 14, 1982, with one contract for the sale of the store for $26,500 and three bills of sale: 1) $15,000 for fixtures and equipment; 2) $11,500 for the inventory; and 3) $18,500 for the horse. These allocations were made simply to accommodate the buyers and had no correlation to actual values.

The Robertses took possession of the store but repudiated the contract a few days later, stopping payment on their checks given in payment of the purchase price. The Stokeses sued for breach of contract and after a bench trial were awarded $5,628 in damages—the difference between the value of the inventory and fixtures, $39,371, and the contract price of $45,000. The two points for reversal are without merit.

The Stokeses first contend interest they incurred on a loan should have been awarded as incidental damages resulting from the breach. They had been operating the store for several years when Mr. Roberts met Mr. Stokes in April 1982. They discussed the possibility of Roberts buying the store and the sale was consummated in June, 1982. When the Stokeses received payment of the $45,000, they deposited the proceeds in their account and paid off some outstanding debts. These debts included a balance of $31,000 on an existing mortgage on their home. The Stokeses assert the mortgage was to obtain funds to finance their business operations. When payment was stopped on the checks, the Stokeses had to borrow to cover the checks they had written and they again mortgaged their home to secure the debt. They submit this second loan was needed to operate their business. It is unclear whether the claim rests on the first or second loan, but in either case, it is without merit.

Appellants rely on recent cases holding that interest is recoverable on loans incurred by one party to perform a contract breached by the opposing party. In those cases interest was awarded from the time of the loan until the judgment was satisfied. This type of "incidental damages" is defined under UCC 2-710:

2-710. *Seller's Incidental Damages.*

Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

This recent innovation in the application of 2-710 is finding acceptance. See, *Bulk Oil* v. *Sun Oil*, 697 F.2d 481 (2nd Cir. 1983); *Gray* v. *West*, 608 S.W.2d 771 (Tex. 1980); *Atlas Concrete Pipe* v. *Au*, 467 F. Supp. 830 (1979); *Intermeat* v. *American Poultry*, 575 F.2d 1017 (2nd Cir. 1978).

*Bulk Oil* v. *Sun Oil, supra* and *Gray* v. *West, supra*, present typical situations when this principle is applied. In both cases the plaintiffs, as sellers, borrowed money to purchase the subject matter of a contract, which the opposing party later breached. When the breach occurred the sellers were left with a debt they would not otherwise have owed but for the contract. Interest had to be paid on the loan until cover was effected. In *Gray*, the court found the actual interest expenses on the money borrowed by the seller to finance the subject matter of the contract, incurred as a result of a buyer's breach, were incidental damages under 2-710. Similarly, in *Bulk Oil* v. *Sun Oil*, the seller had borrowed $4,000,000 to finance a sale of oil to the buyer, who then defaulted, and the court held interest payments on the loan to be incidental to the breach.

We disagree that those cases govern this situation. The interest expense incurred in those cases was a result of performance made in *reliance* on the contracts. See, generally, Farnsworth, Contracts (1982) § 12.1, 12.8. It is the relationship between expenditure and the performance of the contract that provides a basis for holding that interest in those cases was incidental to the breach. See *Ernst Steel Corp.* v. *Horn Construction Div.*, 104 App. Div. 55, 481 N.Y.S.2d 833 (1984).

Here, no expenditure was made by the Stokeses in reliance on the contract. Neither the earlier nor the more recent loan was made in such reliance. At the time of the original loan, the Stokeses did not even know the Robertses. There is no contention that the original loan to finance the store had any relationship to the contract, much less that they relied on it.

As to the second loan, the Stokeses chose to pay off the note on their home with the proceeds of the contract. When the Robertses reneged, they had to acquire another loan to operate their business. While the Stokeses characterize this loan as distinct from the first, it is, in effect, simply a renewal of the previous debt, which had no real relationship to the contract.

The second loan was necessary, not to cover expenses incurred by performance in reliance on the contract, but because of the Stokeses' decision to use the sale proceeds to pay off a pre-existing debt. Had they used the proceeds on some unrelated venture and because of the breach had to cover the expense with a loan, it is clear that such an expense would not be recoverable. The debt was only coincidentally incurred to finance the business, a debt incurred at an earlier time with no relationship to the contract. In the cases cited, except for the performance in reliance on the contract, no loan would have been necessary. *Atlas, supra.* Had the Stokes never entered into this contract, they would be obligated on a loan nonetheless. In reality, the Stokeses are disappointed in their expectation of the use of the proceeds to pay off a pre-existing debt. However, the law does not go that far in fulfilling the expectation interest of a party. See generally, Farnsworth § 12.1, 12.8; Restatement of Contracts 2d (1981) § 344, 351.

The Stokeses' second point concerns the construction the trial court gave to the contracts for the sale of the store for $26,500 and the sale of the horse for $18,500. Appellants argued to the trial court that the instruments should be read separately—the contract for the store for $26,000 would hold no loss, as its value was $39,471 and the contract for the horse at $18,500 would be a loss of $16,500, as the horse was valued at $2,000. The trial court, however, construed the contracts together to find the true intention of the parties and found the sale of the horse was not a separate transaction but part of the sale of the business for $45,000. The Stokeses argued on appeal that the contracts are clear and unambiguous and should be read separately as written.

■■ The argument ignores other rules of construction. When two instruments are executed contemporaneously, by the same parties in the course of the same transaction, they should be considered as one contract for purposes of interpretation, in the

absence of a contrary intention. *Henslee* v. *Boyd*, 235 Ark. 369, 360 S.W.2d 505 (1962); *Gowen* v. *Sullins*, 212 Ark. 824, 208 S.W.2d 450 (1948); *Rawleigh* v. *Wilkes*, 197 Ark. 6, 121 S.W.2d 886 (1938); *Belding* v. *Vaughan*, 108 Ark. 69, 157 S.W. 400 (1913). To arrive at the intention of the parties to a contract, courts may acquaint themselves with the persons and circumstances and place themselves in the same situation as the parties who made the contract. *Schnitt* v. *McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968). We may also consider the construction the parties themselves place on the contract. *Hastings Industrial Co.* v. *Copeland*, 114 Ark. 415, 169 S.W. 1185 (1914).

Appellants concede there is no serious claim the parties intended the instruments to be taken literally, but argue the trial court should have construed the contracts separately nonetheless because of the lack of ambiguity. Admittedly their aim was to get $45,000 for the inventory, which they valued at $39,000. The transaction was partitioned at the request of Mr. Roberts and Mr. Stokes testified that he did not care how it was done as long as he got $45,000. Stokes testified the horse and the inventory were a "couple deal" and he would have sold the store for $45,000 without the horse and he would not have sold the store alone for $26,500 without the arrangement for the horse. It is clear the contracts were intended as one and neither party would have agreed to one without the other. See *Dynamics Corp. of America* v. *International Harvester Co.*, 429 F. Supp. 341 (S.D.N.Y. 1977). See also *Belding, supra*; *Hastings Industrial, supra*.

Affirmed.