UNIVERSAL SECURITY INSURANCE CO. *v.* George
RING

89-74                                              769 S.W.2d 750

Supreme Court of Arkansas
Opinion delivered May 8, 1989

*Friday, Eldredge & Clark,* by: *James M. Simpson, M. Gayle Corley,* and *Guy Alton Wade,* for appellant.

*Murphy, Post, Thompson, Arnold and Skinner,* by: *Jerry Post;* and *Michael R. Gott,* for appellee.

JOHN I. PURTLE, Justice. This case was tried to the circuit court without a jury, and the appellant was held liable for wrongfully exercising the power granted to it in a letter of credit issued to George Ring. The court awarded compensatory and punitive damages. For reversal the appellant argues: (1) the trial court erred in failing to hold that the letter of credit applied to the facts of this case; (2) the trial court erred in holding that the letter of credit was restricted or dependent upon the financial condition of the appellee; (3) the trial court erred in granting damages to George Ring individually; and (4) the trial court erred in awarding punitive damages. We agree with the appellant that the terms of the letter of credit authorized Universal to take the type of action taken in this matter. Therefore, the case is reversed and dismissed.

George Ring, the appellee, and Jerry Mourer formed Southland General Contractors, Inc., in 1980. The two men each owned 50 percent of the shares of the corporation. Larry Tiffee purchased Mourer's shares before the end of 1980. At the same time the appellee owned 100 percent of Ring Construction Company, Inc. In 1980 Southland signed a general agreement of indemnity in favor of the appellant, Universal Security Insurance Co., which was also guaranteed individually by Ring and Tiffee.

In 1981 Southland obtained a contract in Jackson, Missis-

sippi, for the construction of a Kroger store. The Mississippi Tax Commission required payment of sales tax in advance or a bond for the tax on the materials used in the project. A bond was supplied by the appellant through its agents, Babb & Associates, on October 8, 1982. On November 15, 1982, the appellee requested Babb & Associates to issue a performance bond and a labor and materials payment bond for Southland, which was involved in a construction project in the College Park Shopping Center in Meridian, Mississippi. As a part of the transaction Babb, acting for appellant, required the issuance to the appellant of a letter of credit in the amount of $150,000, which was issued by the Citizens Bank of Batesville. The letter of credit was issued on a standard form used by the banking industry for such purposes. The letter of credit was to protect Universal on its obligation to Southland and authorized Universal, in its sole judgment, to issue drafts up to $150,000 on the Citizens Bank. As part of the consideration for issuance of the letter of credit, the Citizens Bank required Southland to execute a promissory note and Ring and Tiffee in their individual capacities to sign the note. The letter of credit was issued by the bank and the appellant issued the additional bonds for the Meridian construction project.

In December of 1982 the appellee sold his interest in Southland and continued to do business as Ring Construction Co., Inc. Mr. Tiffee died in March of 1983. In August of 1983, the appellant informed Southland that the Mississippi Tax Commission was demanding payment on the sales tax bond for the Jackson project. The payment deadline was set by Universal for September 9, 1983, and Southland was informed that after that date Universal would draw against the letter of credit in the amount necessary to settle the sales tax claim by the state of Mississippi. On November 10, 1983, the appellee was present at the Citizens Bank when the appellant presented a sight draft for $56,000. Over the protests of the appellee that the letter of credit did not apply to the Jackson, Mississippi project, the bank paid the draft. The bank demanded immediate reimbursement from the appellee and he drew a draft on the Ring Construction Company account and paid the claim. The draft depleted the account of Ring Construction Company, and according to the appellee, his company consequently could not renew its license and was forced out of business.

In December, 1984, the appellee filed a complaint against the appellant. The complaint alleged that appellee was damaged by the act of the appellant through its negligence, conversion, fraud and breach of contract and that the acts were willful, deliberate and malicious. The amended complaint alleged the tort of outrage. At the conclusion of the bench trial, the court awarded the appellee $188,122 compensatory damages and $45,000 punitive damages.

It is first argued by the appellant that the trial court erred in not holding that the letter of credit applied to any bonds or bonds issued by the appellant on behalf of Southland, the appellee and Tiffee. The letter of credit contained the following language:

> By your sight drafts drawn on us and accompanied by your statement that you as surety have executed a bond or bonds on behalf of Southland General Contractors, Inc., as principal, and in favor of various obligees, in connection with bonds required, and that a claim has been made or a situation exists under which the sole judgment of the surety, a claim may be made or liability, loss, costs, or expense sustained under said bonds or bonds and that monies represented by your draft or drafts are required at the direction of the surety for its protection under said bond or bonds.

The letter of credit established an irrevocable credit in favor of the appellant against the account of Southland General Contractors, Inc., up to the limits of the letter of credit. See Ark. Code Ann. § 4-5-106(2) (1987). It authorized sight drafts by appellant if as surety Universal had executed a bond or bonds on behalf of Southland. The letter of credit extended to any claim made upon or paid by Universal under said bonds for amounts due on behalf of Southland. The letter could be exercised if, in the "sole judgment of the surety," conditions existed which would serve as a basis for a claim. In addition, there was the requirement that if the draft was for less than the full amount of the credit, the draft must be accompanied by the letter for the purpose of endorsing the amount of the draft on the letter. In the event the claim was for the full amount of credit, the letter must be surrendered for cancellation.

The trial court appears to have treated the letter of

credit as a contract of guaranty. The issuer of a letter of credit is not a guarantor of an obligation of his client conditioned upon some future event. A guarantor's obligation is secondary or dependent upon the existence of the primary obligation on the part of its principal. However, the underlying facts are irrelevant to the obligation of an issuer of a letter of credit. See Ark. Code Ann. § 4-5-109 (1987). The issuer's obligation matures when a draft is presented accompanied by any required documentation. The equities among the other parties have no bearing upon the obligation of the issuer.

In the *Handbook of the Law Under the Uniform Commercial Code* (2d ed. 1980), § 18-2, pp. 711-712, Professors White and Summers stated:

> [The] obligation of the issuer to pay the beneficiary is generally *independent* of any obligation (or lack thereof) of the issuer's customer to the beneficiary under the contract between customer and beneficiary. It follows that it is generally wrongful for the issuer to dishonor on the ground that the beneficiary has failed to perform its underlying obligation to the issuer's customer. In other words, the issuer generally cannot justify refusal to honor on the ground that its customer is not getting what he bargained for from the beneficiary-seller. [Emphasis in original.]

When interpreting a written instrument between an insurer and an applicant, we construe the words as used by the parties in their plain ordinary meaning. In *Farm Bureau Mutual Insurance Co.* v. *Milburn*, 269 Ark. 384, 601 S.W.2d 841 (1980), we stated: "Further, a written instrument, such as a contract, binder, application or memorandum, delivered by the insurer to an applicant, is strictly construed against the insurer where the language employed is ambiguous or susceptible to one or more reasonable interpretations." If a written contract is ambiguous it is construed against the party preparing it. *Manhattan Factoring Corp.* v. *Orsburn*, 238 Ark. 947, 385 S.W.2d 785 (1965). Along with the foregoing rules of construction of a written instrument, we must consider the rule that when two instruments are executed contemporaneously by the same parties in the course of the same transaction, the instruments should be considered as one contract

for the purposes of interpretation. *Stokes* v. *Roberts*, 289 Ark. 319, 711 S.W.2d 757 (1986). The appellant could have proceeded under the indemnity agreement against Southland, Ring, or Tiffee. However, it also had the right to proceed against any of the same parties pursuant to its letter of credit. The bond contained a "General Agreement of Indemnity" under which the appellee was obligated to pay to the appellant monies necessary to satisfy a claim made on the appellant under any bond issued by the appellant on behalf of appellee; further, the appellant was given the right to "pay, settle or compromise any expense, claim or charge" arising from the relationship of principal and surety. The letter of credit authorized the appellant to issue a draft when "in the sole judgment of the surety [appellant] a claim may be made or liability, loss, costs or other expense sustained under said bond or bonds." The bond and the letter of credit were one transaction and must be read together.

█ We are not unmindful of appellee's testimony that the letter of credit was not supposed to apply to the Jackson, Mississippi, project. However, the plain words of the letter of credit and surety agreement, given their ordinary meaning, establish that this project was included in the bonds and in the authority granted in the letter of credit.

█ We find nothing in the record to support punitive damages. There was nothing malicious or outrageous in the action of the appellant in enforcing its agreement with the appellee through the letter of credit. It may be that the appellee could have negotiated the tax claim to a lower figure but that is not one of the requirements of the letter of credit. Since the equities among the parties are not to be considered when enforcing a letter of credit, we do not consider them here. Needless to say, we find nothing in the record to support the tort of outrage.

Reversed and dismissed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I disagree that the finding of the trial judge that the Letter of Credit #33 applied only to the bonds applicable to the College Park Shopping Center project has been shown to be clearly erroneous.

Merely because the word "bonds" is plural rather than singular is not a sufficient basis as I see it, to render the letter of credit beyond doubt as to the intention of the parties. That intention is to be gathered from the entire context of the agreement. *Arkansas Power & Light Co.* v. *Murry*, 231 Ark. 559, 331 S.W.2d 98 (1960). Moreover, this instrument was drawn by the appellant and must be interpreted against the party which prepared it. *American Insurance Co.* v. *Rowland*, 177 Ark. 875, 8 S.W.2d 452 (1978).

I would affirm the trial court.