# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3068

_____

Johnson Regional Medical Center

*Plaintiff - Appellee*

v.

Dr. Robert Halterman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: February 7, 2017
Filed: August 15, 2017

_____

Before SMITH, Chief Judge[1], BENTON and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

Dr. Robert Halterman appeals the district court's[2] grant of summary judgment to Johnson Regional Medical Center (JRMC) in this breach of contract suit and the district court's subsequent award of $64,931.81 to JRMC. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

The essential facts are undisputed. In early 2013, JRMC recruited Halterman to work as a full-time obstetrician and gynecologist (OB/Gyn) at its Clarksville, Arkansas facilities. On March 20, 2013, Halterman executed three documents with JRMC: (1) a "Physician Recruitment Agreement" (Recruitment Agreement), (2) a Promissory Note (Note) in favor of JRMC in the principal amount of $50,000.00 plus interest payable in monthly installments, and (3) a "Physician Employment Agreement" (Employment Agreement). After he signed the documents, JRMC advanced Halterman $50,000 in three installments beginning in April 2013 as a "Signing Advance." The Recruitment Agreement provided that the monthly payments under the promissory note would be forgiven as long as Halterman's employment at JRMC continued. Further, the Recruitment Agreement provided that, absent prior termination, it would continue in full force until the final payment on the Note was made or forgiven, except that obligations which extend beyond this period would survive termination of the agreement.

However, Halterman's employment with JRMC only lasted around five months—with Halterman beginning work on July 31, 2013, and resigning by letter on December 23, 2013. Halterman cited an injury to his shoulder as the reason for his resignation.

---

[2]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

In response to Halterman's resignation letter, JRMC informed him by letter dated January 17, 2014, that it accepted his resignation and terminated his employment "pursuant to . . . the Employment Agreement" as of the date of his resignation letter. JRMC, in the same letter, informed Halterman that its monthly forgiveness of his Signing Advance loan payments ceased and it demanded payment of the remaining balance of "[t]hirty-five thousand eight hundred fifty two and 30/100 ($37,894.00) [sic]."[3] Halterman failed to make any payments. He began working elsewhere as a hospitalist during the spring of 2014.

JRMC filed suit against Halterman alleging that (1) he failed to pay the balance of the Note when due (Count 1), and (2) he breached the terms of the Employment Agreement (Count 2). The suit was originally filed in the Circuit Court of Johnson County, Arkansas, but was removed to the United States District Court for the Western District of Arkansas by Halterman under diversity jurisdiction. The parties filed cross-motions for summary judgment on Count 1, and Halterman filed a summary judgment motion on Count 2. The district court granted JRMC's summary judgment motion on Count 1 and denied Halterman's summary judgment motions. JRMC then voluntarily dismissed Count 2. On June 9, 2016, the district court awarded judgment totaling $64,931.81 to JRMC, including $37,894.88 in principal owed under the Note, $21,696.00 in attorney's fees, $3,849.93 in accrued interest to the date of the order, and $1,491.00 in additional costs. Halterman appeals the district court's grant of summary judgment to JRMC and its award of attorney's fees and costs. We affirm.

## II. Analysis

We review "the district court's grant of summary judgment and its interpretation of state contract law de novo." Thornton Drilling v. Nat'l Union Fire

---

[3]We note that there is a difference of $2,041.70 between the numerals in parentheses and the spelled-out number in the text.

Ins. Co., 537 F.3d 943, 945 (8th Cir. 2008). "Summary judgment is proper if the . . . [record] . . . show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (citing Fed. R. Civ. P. 56(c)(2)). In conducting our review, we view "the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record." Holt v. Howard, 806 F.3d 1129, 1132 (8th Cir. 2015) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

Here, Halterman argues that all three of the documents that he executed with JRMC constitute a single contract. He next contends that his performance under that contract was excused by (1) JRMC's breach of contract, (2) JRMC's fraudulent inducement related to misrepresentations regarding Halterman's on-call requirements, and/or (3) his shoulder injury. Finally, he asserts that the district court erred in awarding attorney's fees and costs to JRMC.

## A. The "Contract"

The parties agree that Arkansas substantive law governs. However, the parties contest whether the three documents executed in connection with Halterman's employment at JRMC should be considered separately or as a single contract. We agree with the district court that the documents constitute two separate contracts—(1) the Employment Agreement, and (2) the Recruitment Agreement incorporating the Note. "When two instruments are executed contemporaneously, by the same parties in the course of the same transaction, they should be considered as one contract for purposes of interpretation, in the absence of a contrary intention." Stokes v. Roberts, 711 S.W.2d 757, 759 (Ark. 1986). To look for a contrary intention, "courts may acquaint themselves with the persons and circumstances and place themselves in the

-4-

same situation as the parties who made the contract" and "may also consider the construction the parties themselves place on the contract." Id.

The record supports the conclusion that the Recruitment Agreement and the Note were meant by the parties to function as a single contract. Both documents were signed on the same date. Each document refers to the other expressly and incorporates the other by its terms. For example, the Note states that "the annual installments of principal and interest shall be forgiven as set forth in Article IV of the Physician Recruitment Agreement." Likewise, the Recruitment Agreement (1) refers to the "Physician's execution of the Note" laying out the dates for the three installment payments under the Note, (2) sets out the terms of repayment of "the Note," and (3) specifies the terms of "[f]orgiveness of the Note." The two documents are clearly not mutually exclusive and work together to manage distribution, repayment, and incremental forgiveness of the $50,000 signing advance loan made to Halterman. Thus, the Recruitment Agreement and the Note are to be considered as a single contract. See id.[4]

In contrast, differences in the Recruitment Agreement and the Employment Agreement show that the parties intended that the two documents act as separate contracts. See PC Scale, Inc. v. Roll Off Servs., Inc., 379 S.W.3d 649, 653 (Ark. Ct. App. 2010) (applying Arkansas and California law to determine that four interrelated documents were not a single contract because of inconsistent provisions found therein). First, the two documents have different durations. Specifically, the Recruitment Agreement states that it remains in effect "until the date that final payment on the Note is made or forgiven, unless terminated pursuant to its terms." In contrast, the Employment Agreement's duration is "three years from the Effective Date . . . , subject to earlier termination."

---

[4]Where applicable, we use the term "Recruitment Agreement" throughout the remainder of this opinion to refer to both the Recruitment Agreement and the Note.

Second, both agreements contain independent merger clauses. The Recruitment Agreement's merger clause is entitled "Entire Agreement" and states that "this Agreement constitute[s] the entire agreement between the parties with regard to the subject matter hereof and thereof." Likewise, the Employment Agreement paragraph 23 is titled "Entire Agreement," and says "[t]his Agreement . . . contains the entire agreement between the parties concerning the subject matter hereof." Since each document expressly states that it is the entire agreement between the parties, the parties' intention again appears to be that these two documents act as separate contracts.

Third, each agreement contains different promises and obligations. The Employment Agreement sets out Halterman's "Physician duties and responsibilities," including the location of his practice, malpratice coverage, compensation package, assignment of his fees, and other terms of his employment. In contrast, the Recruitment Agreement sets out the terms of forgiveness of Halterman's "Signing Advance" loan received pursuant to the Note as well as other terms related to recruiting Halterman to Arkansas. Thus, the Employment Agreement and the Recruitment Agreement serve two independent functions—one to recruit Halterman to JRMC and the other to govern his employment once on site at JRMC.

Fourth, each agreement contains different triggers for termination. The Recruitment Agreement gives the Hospital the option to terminate for breach, death or permanent disability, or if federal law jeopardizes the agreement. In contrast, the Employment Agreement sets out many other reasons for termination including drug or alcohol abuse, embezzlement, performance or quality insufficiencies, and other issues related to Halterman's employment. It also allows for either party to terminate the contract without cause with 60 days prior written notice—a provision clearly not in the Recruitment Agreement.

Therefore, for these reasons, we find that the Recruitment Agreement and the Employment Agreement are two separate contracts. JRMC voluntarily dismissed

Count 2, which implicated the Employment Agreement; so, we focus on the Recruitment Agreement in our discussion below.

### B. Halterman's Performance Was Not Excused

Under the terms of the Note, Halterman borrowed $50,000 from JRMC and agreed to repay that principal balance plus interest in 24 monthly payments. The Note expressly incorporates the loan-forgiveness terms specified in the Recruitment Agreement, such that for every month that Halterman practiced as an OB/Gyn physician at JRMC, the hospital agreed to discharge that month's payment as it became due. See Ark. Code Ann. § 4-3-117 (stating that the obligation of a party to pay a promissory note "may be modified [or] supplemented . . . by a separate agreement of the obligor and a person entitled to enforce the instrument").

This arrangement persisted for five months. Halterman does not deny that, accounting for the payments forgiven during that time, he owed $37,894.88 to JRMC when he resigned absent a legal defense. To that end, Halterman alleges that JRMC's fraudulent misrepresentations in negotiating his call-coverage obligations constituted a breach of the duty of good faith and fraud in the inducement. He further contends that JRMC breached the contract and that his shoulder injury prevented him from fulfilling his duties. But, even assuming that these contentions are true, Halterman fails to explain why any of them would allow him to keep the remainder of the loan proceeds.

Halterman's obligation to pay the remaining debt under the Note is not excused by his allegations of fraud or breach of the duty of good faith. Halterman cites no law supporting his assertion that he is entitled to keep the loan proceeds if JRMC fraudulently induced him to sign the Recruitment Agreement. To the contrary, Arkansas law specifies the proper course of action under such circumstances:

> An executory contract which has been procured by fraud is *not binding* upon the party against whom the fraud has been perpetrated. He may, after discovering the fraud, *either perform it or rescind it*, and if with knowledge of the fraud he elects to perform it this is equivalent to his making a new contract, and to permit him, under those circumstances to recover for a fraud would be to do violence to every rule upon which compensatory damages are allowed.

McDonough v. Williams, 92 S.W. 783, 787 (Ark. 1905) (emphases added). Halterman resigned, choosing not to perform. This left rescission as his only option. "It is an elementary principle of law that if one would rescind his contract, he must return or offer to return the consideration which induce[d] its execution." Rhodes v. Survant, 192 S.W.2d 880, 883 (Ark. 1946). Thus, to the extent that Halterman pursues the remedies extended to this situation under Arkansas law, he is still obligated to return the remainder of the principal.[5]

Halterman's vague breach of contract defense is likewise insufficient to discharge his duty to repay the loan. Section 5.1(a) of the Recruitment Agreement specifies that it shall "remain in effect until the date that final payment on the Note is made or forgiven, unless terminated pursuant to its terms." Section 5.1(b) then provides that JRMC has the option to terminate the contract upon any breach of the contract by Halterman. Because neither party contests that the contract is, in fact, terminated, we then look to the contract's language to determine the effect of that termination. See McCuistion v. City of Siloam Springs, 594 S.W.2d 233, 235 (Ark. 1980) (stating that where "there is substantial evidence that a contract existed[,] [the court] must . . . look to the terms of the contract for any measure of damages"). Section 5.1(d) provides as follows: "Upon termination of this Agreement, Hospital's

---

[5]Significantly, Halterman has not asserted a cause of action against JRMC for breach of contract, nor does he expressly seek rescission. In practical effect, however, the remedy he seeks is rescission plus the ability to keep the remainder of the signing advance. There is no legal avenue that leads to this outcome.

obligations hereunder shall cease, and all amounts advanced by Hospital pursuant to this Agreement, plus accrued interest, less amounts repaid by Physician to Hospital or forgiven pursuant to Article IV, shall become an obligation of Physician to Hospital immediately due and payable." Thus, applying the plain language of the contract, the remaining balance became due and payable upon termination, cf. Bank of Am., N.A. v. JB Hanna, LLC, 766 F.3d 841, 852-53 (8th Cir. 2014) (applying Arkansas law and enforcing contractual obligation to pay loan in full on a specified date), and Halterman directs us to nothing allowing him to retain the loan proceeds in the event of an alleged breach by the Hospital.

We likewise find that Halterman's shoulder injury does not allow him to retain the loan proceeds. Both parties agree that Halterman sustained a shoulder injury that prevented him from performing some of the procedures that he was hired to perform. Under section 5.1(b)(ii) of the Recruitment Agreement JRMC had the right to terminate the agreement because of "permanent disability preventing physician's performance" under the agreement. Further, under the Recruitment Agreement, Halterman was obligated to "in good faith and with diligence, pursue [his] practice on a full-time basis and . . . maintain regular office and practice hours." However, he abruptly resigned while JRMC was still forgiving repayments and honoring the contract without engaging in any sort of good-faith negotiations with JRMC as to the appropriate recourse. See Ark. Realtors Ass'n v. Real Forms, LLC, 442 S.W.3d 845, 854 (Ark. 2014) (stating that one pleading the defense of impracticability must "show that he took virtually every action within his power to perform his duty under the contract," and "[i]t must be shown that the thing to be done cannot be effected by any means" (internal quotation marks omitted)). In fact, just months later in the spring of 2014, Halterman resumed work as a hospitalist at another facility suggesting that his concern for permanent disability was overstated, and he failed to present evidence that JRMC would not have accepted a similar level of performance in fulfillment of his contract. Therefore, as with the above defenses, we conclude that Halterman's argument that his repayment of the loan should be forgiven because of his shoulder injury fails as a matter of law.

### C. The Award of Attorney's Fees to JRMC

"We review de novo the legal issues related to the award of attorney's fees and costs and review for abuse of discretion the actual award of attorney's fees and costs." Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1036 (8th Cir. 2008) (internal quotation marks omitted).

A "written agreement[] specifically providing for the payment of attorney's fees" is "enforceable in accordance with its terms" in Arkansas, "independent of the statutory authorization providing for attorney's fees under the circumstances covered by Ark. Code Ann. § 16-22-308." Griffin v. First Nat'l Bank of Crossett, 888 S.W.2d 306, 311 (Ark. 1994); see also Ark. Code Ann. § 16-22-308 ("In any civil action to recover on . . . [a] promissory note . . . for labor or services, or breach of contract, unless otherwise provided by law or the contract . . . , the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.").

Here, the Note provides, "[Halterman] agrees to pay . . . all costs and expenses incurred by [JRMC] in connection with the collection and enforcement of this Note, including, but not limited to, expenses and reasonable attorneys' fees . . . ." The terms of the Note control, as noted above, so Halterman is responsible for JRMC's reasonable "costs and expenses" in collection of the balance due on the Note. Halterman argues unconvincingly that JRMC was not the "prevailing party" in the Recruitment Agreement dispute and cites Arkansas Code Annotated section 16-22-308. However, under Griffin, the Note controls here, and regardless, JRMC was clearly the prevailing party with regard to the dispute over the Recruitment Agreement, and the district court has already discounted the attorney's fees by 25% to account for time spent solely on litigation of the Employment Agreement Count (which was dismissed voluntarily).

-10-

### III. Conclusion

Finding no genuine issues of material fact and that JRMC is entitled to judgment as a matter of law, we affirm the district court's grant of summary judgment to JRMC. We find no abuse of discretion with respect to the district court's award of attorney's fees, and we affirm the judgment of the district court.

_____