RAYMOND R. ABRAMSON, Judge
This case involves a contract dispute that ultimately led to a March 8, 2018 bench trial in the Washington County Circuit Court. The circuit court found in favor of appellee, General Construction Solutions, Inc. (GCS), on its breach-of-contract claim and entered judgment against appellant, JMD Construction Services, LLC (JMD). The circuit court specifically found that the term "sealer" as used in the parties' contract was ambiguous and, resorting to parol evidence to discern the parties' intent, found that credible evidence *52 established that the parties did not intend for GCS to provide any work associated with curing the concrete. Alternatively, the court ruled that even if the contract was not ambiguous, it was subject to reformation based on mutual mistake. The circuit court also dismissed JMD's counterclaim with prejudice. On appeal, JMD argues that the circuit court erred in finding that labor for initial curing was excluded from the scope of work; that the circuit court erred in reforming the subcontract to remove all curing labor from GCS's scope of work; and that the circuit court's order awarding attorney's fees and costs should be reversed. For the following reasons, we affirm.
On May 23, 2016, JMD was hired as the general contractor to build a FedEx Ground facility in Lowell, Arkansas. On September 26, 2016, JMD and GCS entered into a written agreement for GCS, as the subcontractor, to provide the labor for the concrete work to construct the building foundation and floor slab. The scope of work, attached as Exhibit "A" to the subcontract, required GCS to "Provide all Labor necessary to perform a turnkey building foundation and floor slab package as outlined in the Subcontract Documents." Division 3 of the FedEx Ground standard specifications ("specifications"), which were made part of the subcontract, provided a detailed description of the requirements for all concrete work, including, inter alia , both initial curing and final curing, which were defined and distinct processes. The following were listed as "exclusions" from GCS's scope of work: "Bonds, Materials Testing, Permanent Materials, Haul off of Spoils, Security Building, Sealer, Epoxy Crack Fill, Light Plants, Weather Protection, Modular Forms, Excavation & Grading Equipment & Operators."
At the crux of this case is one word: "sealer." GCS contends the term "sealer" includes "curing"; therefore, it was not obligated under the parties' contract to perform any work associated with curing concrete. JMD contends the term "sealer" does not include curing; therefore, GCS was obligated under the parties' contract to perform labor associated with curing the concrete. Over the course of the contract, JMD held back 10 percent retainage pursuant to the terms of the contract, which was to be paid thirty days following completion of the scope of the work, but at the conclusion of the work, JMD failed and refused to pay the retainage, claiming GCS did not perform the curing work required by the contract.
On August 9, 2017, GCS filed suit against JMD for breach of contract. JMD filed an answer and a counterclaim alleging that GCS owed JMD $ 73,486.20 for the cost JMD incurred for labor to perform the initial curing of the concrete slab. GCS subsequently filed a second amended complaint wherein it sought reformation of the contract and declaratory judgment in addition to the breach-of-contract claims asserted in its original and first amended complaints. JMD timely answered both amended complaints.
Following a bench trial, the circuit court found that the term "sealer" as used in the parties' contract was ambiguous, thereby opening the door to parol evidence about the contract negotiations, the correspondence after the contract was entered, and the parties' conduct and course of dealing. After resorting to parol evidence, the circuit court concluded that the exclusion of "sealer" from GCS's scope of work was intended to exclude all labor to cure the concrete, including both initial curing and final curing. The circuit court also reformed the parties' contract to exclude all labor necessary to cure the concrete on the basis of GCS's claim of mutual mistake and dismissed JMD's counterclaim. Judgment *53 was entered in favor of GCS on March 15, 2018, for the principal amount of $ 73,978.73, plus $ 175.63 in recoverable costs and attorney's fees in the amount of $ 9,975.00, together with pre- and postjudgment interest. On April 11, 2018, JMD timely filed its notice of appeal, and this appeal is now properly before our court.
JMD's first appellate argument is that the circuit court erred in finding that labor for initial curing was excluded from GCS's contractual scope of work. JMD and GCS agree that "sealer" is excluded from the contract. JMD further admits that "sealer" is a part of the curing process. The circuit court found that Wes Taylor, owner of GCS, credibly testified that "sealer" and "curing" are the same thing. JMD argues that curing is included in the contract because it is not specifically excluded. But JMD admits that "sealer" as part of the curing process is excluded. No independent expert witness testified at trial regarding the term "sealer" and what exactly it means.
The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. First Nat'l Bank v. Garner , 86 Ark. App. 213, 167 S.W.3d 664 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id.
We have long held that it is the duty of courts to enforce contracts as written and in accordance with the ordinary meaning of the language used and the overall intent and purpose of the parties. Dugal Logging, Inc. v. Ark. Pulpwood Co. , 66 Ark. App. 22, 988 S.W.2d 25 (1999). Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. Ison v. S. Farm Bureau Cas. Co. , 93 Ark. App. 502, 221 S.W.3d 373 (2006). However, the mere fact that a term is not defined does not automatically render a contract ambiguous. Zulpo v. Farm Bureau Mut. Ins. Co. of Ark. , 98 Ark. App. 320, 255 S.W.3d 494 (2007).
The initial determination of the existence of ambiguity in a contract rests with the court, and if ambiguity exists, parol evidence is admissible and the meaning of the term used becomes a question for the fact-finder who may consider oral testimony relating to the circumstances surrounding the execution of the contract as well as conversations had with regard to it. Blount v. McCurdy , 267 Ark. 989, 593 S.W.2d 468 (Ark. Ct. App. 1980). Here, there is obviously much dispute as to the term "sealer" and there is uncertainty as to its meaning; therefore, we hold that the circuit court was correct in finding the contract to be ambiguous and allowing parol evidence to be admitted.
GCS argues that the circuit court properly concluded that "curing" be excluded from the contract even without resorting to parol evidence, citing First National Bank of Crossett v. Griffin , 310 Ark. 164, 832 S.W.2d 816 (1992).
[T]he parol evidence rule does not prohibit the introduction of extrinsic evidence where it would aid the court in interpreting the meaning of particular language of a contract, such as when the contract contains terms of art or words which have acquired their meaning through a course of dealing or custom or usage. Les-Bil, Inc. v. General Waterworks Corp. , 256 Ark. 905, 511 S.W.2d 166 (1974). Nor does the parol evidence rule prohibit the court's acquainting itself with the circumstances surrounding the making of the contract.
*54 Stokes v. Roberts , 289 Ark. 319, 711 S.W.2d 757 (1986) ; Schnitt v. McKellar , 244 Ark. 377, 427 S.W.2d 202 (1968).
First Nat'l Bank of Crossett , 310 Ark. at 168-69, 832 S.W.2d at 818-19 (1992).
GCS contends that here it was perfectly proper for the circuit court to consider extrinsic evidence regarding terms of art like "curing" and "sealing" and their meanings based on course of dealing, custom, or usage. We agree. Taylor's credible testimony that "curing" and "sealing" are synonymous terms in his business was proper evidence for the court to consider.
Different trades, in addition to coining words of their own, also appropriate common words and assign to them new meanings. In some types of cases, and under some circumstances, one cannot understand accurately the language of such trades without knowing the particular meanings attached to the words which they use. It is often said that a court in construing the language of the parties must put itself into the shoes of those making the contract. That alone would not suffice in some cases. The courts must also understand and adopt their vernaculars. Hurst v. Lake and Company , 141 Or. 306, 16 P.2d 627, 89 A.L.R. 1222. If "usage" was not admissible evidence, then no dictionary would be admissible to aid a court or a jury. 3 Corbin, Contracts, s 555 (1960 and Supp. 1971).
Gilstrap v. Jackson , 269 Ark. 876, 878-79, 601 S.W.2d 270, 271 (Ark. Ct. App. 1980).
Likewise, the circumstances of the contract are valid considerations. Stokes v. Roberts , 289 Ark. 319, 711 S.W.2d 757 (1986). The parol-evidence rule does not prohibit the court's acquainting itself with the circumstances surrounding the making of the contract. Id. Here, those circumstances include the three prior bids that reflected a line item for curing; the fact that the "curing" line item was struck in the third bid; and specifically curing was not included in the fourth bid, which was the bid that was ultimately accepted.
We hold that the circuit court properly considered parol evidence and extrinsic evidence in this case. The circuit court found, based on the testimony, that after the first concrete pour in December 2016, JMD performed the curing with its own labor. Eleven more concrete pours were performed between December 2016 and February 2017. In that time, JMD never made any mention or notification by email, letter, or a phone call--"no statements whatsoever made by any agents for the defendant"--claiming that GCS was responsible for doing the curing work.
The circuit court specifically found Wes Taylor, owner of GCS, to be credible. Taylor testified that everyone understood JMD was performing the curing. Taylor assisted JMD in picking out the burlap for the curing, but he was never asked to perform the curing work. Taylor also testified that "sealing" and "curing" are synonymous in his business. According to Taylor's testimony, sealer is a form of curing--specifically, a curing compound. On the stand, Taylor indicated that turnkey building foundation includes curing unless curing is excluded. Taylor further elaborated that because sealer was excluded in the contract and because, based on his experience, sealer and curing were coterminous, then all curing was excluded from GCS's scope of work.
The testimony and documentary evidence also show GCS submitted at least two prior bids, both of which were rejected by JMD, that did include curing. On the third bid, the line item for "curing" was specifically excluded. The fourth bid, which was accepted, did not contain any line item charge for "curing." After the first concrete pour, JMD--and not GCS--did the *55 curing. Moreover, Ken Frey, JMD's superintendent, wrote in an email to Taylor, "I guess you guys don't have water cure or building temp shelter or covering subgrade so guess I will do it?"
On appeal, JMD urges that there is a distinction between the terms "sealer" and "curing." But that is a disputed question of fact for the circuit court. The evidence presented indicated that "sealer" and "curing" are interchangeable terms of art in the business. The circuit court specifically found Taylor's testimony credible. The circuit court, on the other hand, found Jacy Daugherty, owner of JMD, not credible. Specifically, the court found Daugherty not credible because of the undisputed course of dealing between the parties and his own communications and emails. The circuit court found that JMD's late-raised issue about "curing" was a ruse to avoid payment that was due and that he had strung along GCS by promising payments for months. In rebuttal, JMD explained at oral argument that the issue was not raised during the performance of the contract because the project was running behind schedule and such an argument would have caused costly delays. On appeal, we will not act as a super fact-finder and reweigh the circuit court's findings on disputed questions of fact. Buskirk v. Buskirk , 2018 Ark. App. 417, 559 S.W.3d 285.
Upon our review, we hold that the circuit court's findings were not clearly erroneous. The circuit court had a thorough and well-reasoned analysis in its decision, and we cannot say with firm and definite conviction that a mistake has been made. See Hudson v. Hilo , 88 Ark. App. 317, 198 S.W.3d 569 (2004). As such, we affirm the circuit court's decision that the contract was ambiguous, and hold that it properly considered permissible parol evidence and found that GCS was not responsible for the curing in this case.
In its alternative ruling, the circuit court found the contract was subject to reformation based on mutual mistake. Because we hold that there was no error in the circuit court's finding that the contract was ambiguous and that curing was not part of GCS's duties, we need not address JMD's second point regarding the court's reformation of the contract. JMD's final appellate point is that the circuit court's order awarding attorney's fees and costs should be reversed. On this point, JMD merely seeks reversal of the attorney's-fee award in the event our court reverses on either of the two appellate points. The basis for the argument is solely that if the judgment is reversed, the attorney's-fee award should also be reversed. JMD does not challenge the amount of the fee award, the time spent, or counsel's rate. Having affirmed the circuit court's judgment, we also affirm the award of attorney's fees.
Affirmed.
Gruber, C.J., and Harrison, J., agree.