# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-1884

_____

Dakota Energy Cooperative, Inc.

*Plaintiff - Appellant*

v.

East River Electric Power Cooperative, Inc.

*Defendant - Appellee*

Basin Electric Power Cooperative

*Intervenor Defendant - Appellee*

------------------------------

Next Generation Cooperative Alliance; Geoffrey F. Heffernan; Jeremy D. Weinstein

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: November 15, 2022
Filed: July 28, 2023

_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

Dakota Energy Power Cooperative, Inc., a member of East River Electric Power Cooperative, Inc., sought to withdraw from East River and to terminate the parties' long-term power contract so that it could purchase electricity from another source. When East River resisted, Dakota Energy sued for anticipatory breach of contract and sought a declaratory judgment providing that it had a contractual right to withdraw from East River by way of a buyout. The district court[1] granted summary judgment in favor of East River, and Dakota Energy appeals.

I.

Dakota Energy is a South Dakota-based electric distribution cooperative that provides electricity to its rural consumer-members. East River is a South Dakota generation and transmission cooperative that purchases electricity wholesale and then resells it to its members, including Dakota Energy.

When Dakota Energy became a member of East River in 1995, the two parties entered into a long-term power supply agreement known as a wholesale power contract (WPC). The WPC provides that

> East River shall sell and deliver to [Dakota Energy] and [Dakota Energy] shall purchase and receive from East River, all electric power and energy which [Dakota Energy] shall require to serve all of [its] electric loads, to the extent that East River shall have such power and energy and facilities available.

The WPC describes the "terms, conditions, and rates for the furnishing of electric power" under the agreement and explains that the rates paid by Dakota Energy will be used to cover, among other things, "the cost of the operation and maintenance"

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

of East River's "transmission system"; the "cost of related services"; the cost of maintaining "reasonable margins and reserves"; and the "principal and interest payments" on East River's "indebtedness." As relevant here, the WPC further provides that it "shall remain in effect" until December 31, 2075, and "thereafter until terminated by either Party giving to the other not less than six months' written notice of its intention to terminate."[2] No provision in the WPC expressly allows for termination prior to this 2075 end date.

By joining East River, Dakota Energy also agreed to comply with the former's Bylaws. Those Bylaws provide that "[e]ach member shall purchase from [East River] all electric power and energy required by the member to serve all its electric loads," subject to limited exceptions not relevant here. The Bylaws also allow a member to "withdraw from membership upon compliance with such equitable terms and conditions as the Board of Directors may prescribe, provided, however, that no member shall be permitted to withdraw until it has met all contractual obligations to the Cooperative."

In 2018, Dakota Energy, having become dissatisfied with the rising cost of the electricity it was purchasing, sought to withdraw from East River. Dakota Energy's board of directors accordingly passed a resolution directing management to work with East River to determine "the amount East River would charge for Dakota Energy to 'buy out' of" the WPC. East River ultimately declined Dakota Energy's request for a buyout number, however, explaining in a March 2019 letter that the WPC "do[es] not contain any provision permitting" Dakota Energy "to buy-out of its" contractual obligations.

Dakota Energy subsequently sued East River in South Dakota state court, alleging an anticipatory breach of the member-withdrawal provision in East River's Bylaws. Dakota Energy also sought a declaration that the Bylaws permitted it to

---

[2]The WPC was originally supposed to remain in effect until December 31, 2038, but Dakota Energy and East River agreed to extend the WPC's term to 2058 in 2006, and then to 2075 nine years later.

withdraw from East River on "equitable terms and conditions" and to "discharge" its obligations under the WPC before the end of that agreement's term in 2075. East River removed the case to federal court and asserted in a counterclaim that it was "entitled to a declaration" that its Bylaws "do not permit Dakota Energy to withdraw before fulfilling its obligations under the WPC" and that the WPC, in turn, "does not allow for early termination." The district court granted summary judgment to East River, concluding in relevant part that the WPC unambiguously requires Dakota Energy to purchase electricity exclusively from East River until December 31, 2075, and that "no separate provision" in the WPC or East River's Bylaws "provides for" the "early withdrawal" that Dakota Energy sought. Dakota Energy now appeals.[3]

## II.

We review the district court's grant of summary judgment de novo, including its interpretation of South Dakota contract law.[4] Johnson Reg'l Med. Ctr. v. Halterman, 867 F.3d 1013, 1016 (8th Cir. 2017). Summary judgment is appropriate if, after viewing the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor, there remains "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

---

[3]Dakota Energy also appeals the district court's decision to allow Basin Electric Power Cooperative to intervene in this case pursuant to Federal Rule of Civil Procedure 24. Dakota Energy argues that Basin lacked standing to intervene because it has not shown the requisite injury in fact. See United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 833 (8th Cir. 2009) ("In our circuit, a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24."). Yet the record indicates that Basin, which generates and sells electricity to East River, would sell less of that electricity if East River were to lose one of its members—here, Dakota Energy. And that "[r]isk of direct financial harm establishes injury in fact" for standing purposes. Nat'l Parks Conservation Ass'n v. EPA, 759 F.3d 969, 975 (8th Cir. 2014). We therefore affirm the district court's grant of Basin Electric's motion to intervene.

[4]The parties agree that South Dakota law governs this case.

Hairston v. Wormuth, 6 F.4th 834, 840–41 (8th Cir. 2021) (quoting McPherson v. O'Reilly Auto., Inc., 491 F.3d 726, 730 (8th Cir. 2007)); see Fed. R. Civ. P. 56(a).

On appeal, Dakota Energy contends that the district court erred in concluding that East River's Bylaws do not permit it to withdraw from East River before the end of the WPC's term in 2075. East River argues in response that the WPC unambiguously bars Dakota Energy from terminating the agreement before the end of its term and that, so long as the WPC remains in effect, Dakota Energy has not "met" all of its "contractual obligations" to East River, as is required for withdrawal under the Bylaws.

Under South Dakota law, a court interpreting a contract must "look[] to the language that the parties used in the contract to determine their intention." Poeppel v. Lester, 827 N.W.2d 580, 584 (S.D. 2013) (quoting Detmers v. Costner, 814 N.W.2d 146, 151 (S.D. 2012)). "[E]ffect will be given to the plain meaning of" the contract's "words." In re Dissolution of Midnight Star Enters., L.P., 724 N.W.2d 334, 337 (S.D. 2006). And "[if] the parties' intention is made clear by the language of the contract, 'it is the duty of [the court] to declare and enforce it.'" Lillibridge v. Meade Sch. Dist. # 46-1, 746 N.W.2d 428, 432 (S.D. 2008) (quoting Pauley v. Simonson, 720 N.W.2d 665, 668 (S.D. 2006)).

Looking to the plain language of the WPC and East River's Bylaws here, and construing both as a "single integrated contract" as Dakota Energy demands,[5] we agree with the district court that they do not grant Dakota Energy the withdrawal and early-termination rights it wishes to exercise. The Bylaws permit Dakota Energy to "withdraw from membership" in East River. But that withdrawal right is expressly

---

[5]The district court "read" the WPC and East River's Bylaws "together," and we do the same without necessarily deciding that this approach is required under South Dakota law. See Paramount Tech. Prods., Inc. v. GSE Lining Tech., Inc., 112 F.3d 942, 945 (8th Cir. 1997) (explaining that under South Dakota law, "when two contracts are executed at the same time, by nearly identical parties, and as part of the same transaction, those contracts are to be read together").

conditioned on Dakota Energy first meeting "all" of its "contractual obligations" to East River.  The parties agree that those "contractual obligations" are spelled out in the WPC.  And the WPC, in turn, unambiguously obligates Dakota Energy to "purchase and receive . . . all" of its "electric power" from East River until December 31, 2075.

Dakota Energy counters this conclusion with several arguments.  It first suggests that enforcing the WPC's term provision as written would "imprison [it] in East River until January 2076" and thus impermissibly render its express withdrawal right under the Bylaws "illusory" and "meaningless."  But Dakota Energy *can* exercise its withdrawal right, so long as it first meets its "contractual obligations" under the WPC.  And the fact that Dakota Energy cannot meet those obligations until December 31, 2075, is simply a consequence of the plain and unambiguous language of its bargained-for agreement with East River.  See Ziegler Furniture & Funeral Home, Inc. v. Cicmanec, 709 N.W.2d 350, 355 (S.D. 2006) ("[T]he proper interpretation of a contract must give effect to the intention of the contracting parties.").

Next, Dakota Energy argues that "the particulars" of its withdrawal right under the Bylaws are, "at minimum," ambiguous, such that summary judgment was unwarranted.  See Midwest Med. Sols., LLC v. Exactech U.S., Inc., 21 F.4th 1002, 1005 (8th Cir. 2021) ("[I]f the contract is ambiguous, its meaning is a question of fact, and summary judgment is inappropriate unless evidence of the parties' intent is conclusive.").  More specifically, it takes the position that "[n]othing in" the Bylaws or the WPC "defines or limits the means by which [it] can meet its contractual obligations" to East River, and that, by extension, purchasing all of its power from East River until December 31, 2075, is not the only way "withdrawal can be accomplished."  One such alternative, according to Dakota Energy, would be to "buy out of" the WPC "on fair terms."  And Dakota Energy says that another provision in the WPC "demonstrate[s] that a buyout must be considered as *one* reasonable option to fulfill [its] contractual obligations."

-6-

The WPC provision that Dakota Energy points to reads in pertinent part:

14. <u>Transfers by the Member</u>: (a) [Dakota Energy] agrees that during the term of this Agreement, . . . [it] will not, without the approval in writing of East River . . . , take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation, or to sell, lease, or transfer (or make any agreement therefore), all or a substantial portion of its assets, whether now owned or hereafter acquired. Notwithstanding the foregoing, [Dakota Energy] may take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation or to sell, lease, or transfer (or make any agreement therefore) all or a substantial portion of its assets, whether now owned or hereafter acquired, so long as [Dakota Energy] shall pay such portion of the outstanding indebtedness on the Notes as shall be determined by East River . . . and shall otherwise comply with such reasonable terms and conditions as . . . East River may require.

Dakota Energy claims that this section provides a methodology for buying out of the WPC and that a buyout is therefore an acceptable method of meeting its "contractual obligations" to East River. But reading this section as providing for a catch-all early-buyout option ignores the provision's plain language. The section addresses transfers of ownership and assets and expressly applies only to East River members engaged in such conduct—none of which Dakota Energy claims to be engaged in here. The section does not mention buying out of or terminating the WPC as a general matter. And the WPC contains no other provision allowing for a buyout, early or otherwise. Nothing in the WPC, then, renders ambiguous the Bylaws' requirement that Dakota Energy must first meet "all contractual obligations" under the WPC before it can withdraw from East River.

Finally, Dakota Energy argues that the district court erroneously ignored "overwhelming trade usage evidence demonstrating that" it has a right to withdraw from East River "that can be effectuated through" a buyout. Because we find no ambiguity in the contract provisions at issue here—namely, the Bylaws' withdrawal provision and the WPC's term provision—we ordinarily would not consider such extrinsic evidence. <u>See</u> <u>Berkley Reg'l Specialty Ins. Co. v. Dowling Spray Serv.</u>,

-7-

864 N.W.2d 505, 512 (S.D. 2015) ("Extrinsic evidence must not be considered when the language of a contract is unambiguous."). Dakota Energy maintains, however, that the Uniform Commercial Code (UCC) applies to this case. And it claims that under the UCC, evidence of trade usage is admissible "to inform an ambiguity determination," and that the trade usage evidence it proffered at the summary judgment stage "establishes" that the Bylaws are "ambiguous" as to whether withdrawal can be achieved by way of a buyout. See S.D. Codified Laws § 57A-1-303(c) ("A 'usage of trade' is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question.").

As an initial matter, South Dakota's UCC "applies to transactions in goods," id. § 57A-2-102, and the parties dispute whether electric power is such a "good."[6] See id. § 57A-2-105(1) (defining "Goods" in relevant part as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale"). We need not resolve this issue, however, because even assuming that the WPC and the Bylaws are governed by the UCC, the trade usage evidence that Dakota Energy wanted the district court to consider does not preclude summary judgment in East River's favor here.

Under the UCC, the terms of a written contract "may be explained or supplemented" by certain extrinsic evidence, including "usage of trade." Id. § 57A-2-202(a). Dakota Energy's proffered trade usage evidence, however, would not simply "explain[]" or "supplement[]" the withdrawal provision in the Bylaws. Rather, that evidence would effectively add an entirely new provision to the WPC— one that would permit termination of the WPC by means of a buyout at any time prior to the end of the agreement's term in 2075. See id. § 57A-2-202(b) (providing

_____

[6]The withdrawal provision that Dakota Energy asserts is ambiguous is found in the Bylaws, which govern membership in East River and are decidedly not a contract for a sale of goods. But the WPC is a contract for the sale of electricity, and we assume Dakota Energy wants us to construe the WPC and the Bylaws as a single integrated contract governed by the UCC.

-8-

that a written contract cannot be "supplemented" by "additional terms" if the contract is a "complete and exclusive statement of the terms of the [parties'] agreement"). Moreover, under the UCC, "the express terms of an agreement and any applicable . . . usage of trade must be construed whenever reasonable as consistent with each other." Id. § 57A-1-303(e). Here, the express terms of the WPC—which provide that the agreement will "remain in effect" until December 31, 2075, and which contain no provision allowing for an early buyout—are inconsistent with any trade usage evidence suggesting something to the contrary. And in such a situation, the UCC and South Dakota law dictate that a contract's "[e]xpress terms prevail over . . . usage of trade." Id.; see Swiden Appliance & Furniture, Inc. v. Nat'l Bank of South Dakota, 357 N.W.2d 271, 274 (S.D. 1984) ("[O]bligations created under . . . usage of trade are subordinate to any terms of an express agreement with which . . . a trade usage disagree[s].").

For these reasons, we conclude that the WPC unambiguously requires Dakota Energy to purchase all of its electricity from East River until December 31, 2075, and that no provision in the WPC or East River's Bylaws allows for an earlier termination of that obligation. The district court thus properly granted summary judgment to East River.

III.

We affirm the judgment of the district court.

_____